# Exhibit A

## *REIGN FINANCIAL INTERNATIONAL, INC.*

### TRADE AGREEMENT for Prime Capital Ventures, LLC
### No. PCV-RFI-20M-092022

This Agreement is made this day of 3 October 2022 2022, by and between:

**REIGN FINANCIAL INTERNATIONAL, INC. and Its Affiliates et. al.,** an entity organized and existing under the laws of Delaware, United States, with registered address at 8 The Green, Suite R, Dover, Delaware 19901, represented by its Chief Executive Officer Giorgio Johnson, holder of USA Passport No. 530948922;

(Hereinafter referred to as the "RFI")

- And -

**Prime Capital Ventures, LLC**, a Company registered and existing under the laws of Delaware, USA, with a registered address at 1209 Orange St., Wilmington, DE 19801 USA, with a mailing address at 66 Pearl St., 10th Floor, Albany, NY 12207 USA, represented by **its CEO, Kris D. Roglieri**, holder of **USA Passport No. 549088988.**

(Hereinafter referred to as the "PCV")

WHEREAS, the Parties have specific experience in the areas of finance, funding, and financial private commercial transactions (hereinafter referred to as "Programs" or a "Program") available for the investment; and

WHEREAS, the Parties have agreed to enter this investment opportunity for the purpose of project funding along with other business purposes; and

WHEREAS, **PCV** enters said agreement and/or other agreements for the purpose of commercial activity investments as set out and defined in this Agreement; and

**PCV** wishes to participate in a financial private commercial transaction (hereinafter referred to as "Programs" or a "Program") and has made available cash funds in the amount of **$20,000,000.00 Dollars (Twenty Million US Dollars),** to be sent in United States Dollar equivalent, and wishes to transfer said funds to a new account created for **PCV,** in their name, at a hedge fund described herein. The funds are acknowledged, by **PCV** as being clean, clear, fully transferable, unencumbered, legally earned, as the initial investment capital, (hereinafter referred to as the "Investment Capital"); and

RFI has agreed to include **PCV** in the Program(s) that RFI will enter in to, to earn profits for the benefit of and on behalf of all participants entering the Program(s) in the aggregate; and

Now therefore, the Parties enter into this Agreement under the following terms, conditions, and procedures to effectively access said Program(s):

ARTICLE 1.    SCOPE AND DESCRIPTION

    1.1.  The purpose of this Agreement is to invest funds in the hedge fund, Berone Capital Fund, L.P. (hereinafter referred to as the "hedge fund" or as "Berone"), so that the hedge fund can provide RFI the ability to create an account at BNP Paribas and take said account into the Program(s); and

    1.2.  This Agreement shall continue for one (1) year, to allow RFI to participate in a Private Commercial Funding Program (i.e., the Program(s)) during the 52-week calendar year.  The duration period shall be determined based on the time **PCV** sends their investment funds to their account at the hedge fund, the account at BNP Paribas is created and has provided the required BCL to RFI, RFI signs a trade contract with the trade platform, the required Swift MT799 confirmation is delivered to the trade platform and the

Initial                  Page **1** of **10**                        Initial

trade program begins, subject to Section 1.4 below; and

1.3. There are certain weeks during the year, especially at the beginning and end of a calendar year, when there will be no commercial transaction activity. Written notice, via electronic mail, will be provided when there is a week or weeks with no commercial transaction activity, if it has any effect on the proposed payments under this contract. This will not change Section 1.2 above but will adjust the schedule for completion of any period and extend said period to account for a week(s) of no activity.

1.4. **PCV** has been informed and understands that they were not required to be a member of a group that will be aggregating for this Program(s), as on their own **PCV** does meet the minimum requirements for RFI to enter such commercial transaction that can generate the profits proposed herein. It is being made known to **PCV** that the Program(s) cannot begin (as stated or referenced in Sections 1.2, 1.3, 2.2.6, 2.3, 3.4 and 3.6) until they created their own accounts at the hedge fund and their funds have been sent to their respective account(s) at said hedge fund and the hedge fund is able to assist RFI's creation of the necessary account at BNP Paribas.

1.5. On termination or cancellation of the Program, for any reason, **PCV** may work with the hedge fund to arrange liquidation of their account at the hedge fund for the return of their capital or may agree with the hedge fund to maintain their investment account. If the trade program that RFI enters does not perform, immediate steps will be taken by RFI to unwind the BNP account and have the hedge fund release the funds in the account of **PCV** back to their designated account at any banking institution they should designate. This process of unwinding everything may take up to 5-7 banking days from the demand of **PCV** to receive their funds back due to non-performance of the trade program that RFI entered in to.

ARTICLE 2.    MODUS OPERANDI

During the existence of this Agreement, the Parties shall be responsible and liable for the following duties:

2.1. **PCV** will provide the following:

2.1.1.    Submission package to be approved and accepted to enter the private commercial transactions under this Agreement; and

2.1.2.    Return executed Documents, including this Agreement, completed W-8BEN or W-9 Form and all necessary commercial transaction documents per **PCV** depository bank that **PCV** will send the cash funds from, and

2.1.3.    Execute new account documents sent to **PCV** by the hedge fund, Berone Capital Fund, L.P. to create the account for **PCV** at Berone. **PCV** will receive an online account login from the third-party administrator for the hedge fund that allows **PCV** to view their account at Berone, via online access; and

2.1.4.    Provide Cash Funds to **PCV's** account at Berone within 2 banking days after **PCV** has executed the new account documents with Berone; and

2.1.5.    Provide any documentation and cooperation with RFI required to validate and authenticate **PCV's** assets for security within the provisions of this Agreement; and

2.1.6.    **PCV** agrees to maintain their account at Berone for a minimum of one (1) year from the date client's account is funded or until the commercial transaction under the Program(s) is completed, whichever is longer. PCV reserves the right to cancel its contract with Berone and RFI at any time while under this agreement due to non-performance of program that RFI enters and can request the return of PCV funds in 5 to 7 business banking days without penalty. After this period has ended, **PCV** will discuss with Berone as to whether Berone will maintain the investment account at Berone for **PCV** or if Berone will liquidate the account and send the funds at that time to the designated location provided by **PCV**.

 

2.1.7.    This Agreement will be provided to Berone and serve as instructions from **PCV** to Berone that Berone is authorized to work with RFI to allow RFI to enter the proposed program. However, this shall not authorize Berone to allow any of **PCV's** principal to be withdrawn or directly used for any transaction outside of Berone. **PCV** also authorizes Berone to prevent RBC Capital Markets from closing the account of **PCV** during the duration of the program term

2.2.   RFI will provide the following:

2.2.1    This Agreement duly signed and presented to **PCV**; and

2.2.2    Payment to **PCV** project funding account within time frame provided herein, subject to receipt of said cash funds from the Program(s) that RFI will enter on behalf of its client(s); and

2.2.3    Documents for PCV, W-9 or W-8BEN Form to be completed and executed as well as all necessary commercial transaction documents required; and

2.2.4    **Provide its assurance to PCV that RFI will use its best efforts to generate the profits proposed herein. RFI's best efforts and the generation of profits proposed herein are completely dependent on the performance of the Program(s) that RFI will enter.**

2.3.   Once **PCV's** funds have been credited to their account at Berone, RFI will begin working with Berone to allow the necessary account at BNP Paribas to be created for RFI to fulfill the requirements of the program that RFI will enter. It will take approximately 5-6 business days for the BNP Paribas account to be created and obtain the necessary BCL that will allow RFI to submit for the program they will enter. Once the program that RFI enters has begun, it will take four (4) weeks to provide the first payout as described in this Agreement. RFI will provide confirmation of each major step in the process to **PCV,** including when the BNP Paribas account is open, when RFI has received the required BCL, submitted to the program, been approved by the program and the date the program begins.

2.4.   If, for any reason, the Program(s) does not commence or perform, RFI will not be liable to pay any profits or returns to any party. The lack of performance of the Program(s) is completely outside the control of RFI and therefore, RFI will not be held liable for the Program(s)'s lack of performance nor for the lack or performance of any third party related to the transaction, nor be responsible for any payments to any party based on a third party's inability to perform.

Initials: _____19_____

ARTICLE 3.      PROFITS AND DISTRIBUTION

3.1   Profits are subject to generating sufficient funds on a timely manner from the Program(s). This is a best-efforts transaction and completed dependent on the performance of the transaction that RFI will enter for the benefit of **PCV.**

3.2   Gross profit in Section 3.4.2 is established by the value of the funds that **PCV** places into their account at Berone**.**

3.3   **PCV** agrees that the resulting profits generated from the Program(s) to be paid herein from this transaction shall be payable to **PCV** under Joint Venture Agreement with reference code listed below [Addendum 1 – Paymaster Distribution Coordinates]. All proceeds directed to **PCV** relative to this transaction(s) will be considered as earned by **PCV** as profits. **PCV's** net profit will be distributed to **PCV** established Proceed Account, according to Addendum 1.

3.4   The proceeds yielded from the program, the Net Proceeds, of this Agreement, shall be paid out in accordance with the Joint Venture Agreement dated September 28, 2022, under Investor Transaction Code: PCV-RFI-20M-092022 as follow:

3.4.1   RFI (Reign Financial International, Inc.) shall receive Twenty percent (20%) of the Net Proceeds and the VENTURER shall receive Eighty percent (80%) of the net proceeds.

3.4.2   **Disbursement Schedule:**

| | |
|---|---|
| A) 10 monthly payments will begin as per the timing stated above in Section 2.3 and if it is possible to make the payment more frequently, best efforts will be made to do so with a smaller amount paid weekly to equal the monthly payment amount: | (*) $20,000,000.00 Dollars (Twenty Million US Dollars) equals gross proceeds {GP}, that will be used for the benefit of **PCV** and rolled into "B" below. |
| B) **PCV**'s gross proceeds (GP) are deemed to be placed into the 40-week trade program and paid as stated above: | 300% of (GP) per month gross before deductions per Joint Venture Agreement dated September 28, 2022, under Investor Transaction Code: PCV-RFI-20M-092022, to be disbursed after each active week of the program. This is to be paid monthly, but if it is possible to pay on a weekly basis, such weekly payment would be 75% of (GP) per week, subject to the above. |

3.4.3   Payments made under Section 3.4.2 shall be made at the discretion of the identified paymaster described in Addendum 1 of this Agreement and based upon the terms of this Agreement and the Escrow Agreement executed between **PCV,** Reign Financial International, Inc. and the Paymaster.

3.4.4   **PCV** shall not be responsible to pay any intermediary group and/or consultants from its net amount of profits as there are no intermediaries or other consultants involved in this transaction; and **PCV** shall hold RFI harmless from any such intermediary group and/or consultants.

3.5   Unless otherwise agreed upon in writing, the Paymaster designated herein shall receive all distributions of profits to **PCV** (See Addendum 1 attached hereto), which will be subject to the Paymaster's standard fees.

ARTICLE 4.   INCOME TAX

4.1   **PCV** individually and separately, accepts liability for their own taxes, levies, duties, charges, and any institutional costs that may apply in the execution in their respective roles in this Agreement.

4.2   **PCV** acknowledges that it will be responsible for its own tax reporting once distribution is made.

ARTICLE 5.   CONFIDENTIALITY

5.1   It is essential for the success of this Program(s) that, wherever possible, the names and activities of the Parties of this Agreement, the amount of each transaction, and specific details of each transaction must be kept proprietary and confidential. Each Party acknowledges the need for this confidentiality and agrees to do nothing to breach this confidentiality.

ARTICLE 6.   NON-CIRCUMVENTION

6.1   The Parties shall respect the integrity and tangible value of the compensation structure and shall not in any manner whatsoever, attempt to circumvent the validity and integrity of the protocols and processes of the transaction, as initially defined, and as initially acted upon. In any of the transactions, whether

 

being entered into during any attempted transactional process, any contract introduced by one Party to the other, shall be considered the property of the introducing Party, without the specific authorization of the first Party to do so. Each of the Parties below accept and understand that any overt or covert action of circumvention of the respective process shall constitute a serious trespass of trust and legality, and will be subject to judicial action, recompense, and possible punitive damages as so awarded by legal process.

6.2    The names, identities, bank coordinates and other identifying information of persons or entities that are a party to this transaction, contained herein, or learned hereafter shall be a Corporate Trade Secret that shall not be disseminated or circumvented other than as provided for herein, or as allowed under applicable law. Any unauthorized circumvention or disclosure of this transaction, parties to, or other material fact of, shall subject the violator to legal prosecution.

6.3    Inasmuch as any document passed through the hands, or electronic equipment to any broker, intermediary or entity not signatory to this Agreement, and any material fact provided to any broker, intermediary or entity not signatory to this Agreement, allowed herein (as per Article 8: Notices), or as required by applicable law, unless otherwise agreed upon, will immediately subject the violator to legal prosecution.

6.4    It is further understood that where one Party contravenes the integrity of the mutual procedure, the contravening Party(ies) shall:

6.4.1    Indemnify fully all commissions, fees, or money obtained directly or indirectly by the contravening Party, from the associated violation to the non-contravening Party(ies); and

6.4.2    Indemnify and be liable for all legal fees for all Parties which may be incurred during the adjudication of said violation; and

6.4.3    Be subject to the possible punitive action as awarded by legal process.

## ARTICLE 7.    ARBITRATION

7.1    In all cases, the contracting Parties herein shall settle any such dispute as may arise locally, upon mutual agreement, unless arbitration becomes necessary. By their execution of this Agreement, the Parties hereto submit themselves to the jurisdiction of United State of America, in the District of Columbia, Washington, DC.

7.2    Every attempt shall be made to resolve disputes arising from intended or inadvertent violation of this Agreement, as possible. In the event that adjudication is required, local process shall be proceeded with, according to the principles of the International Chamber of Commerce rules & regulations as amended, (hereinafter referred to as the "I.C.C"). Where judicial resolution is not thereby achieved, this matter is to be settled by which is recognized as the Agency having authority over matters of I.C.C. itself, the decision of which all Parties shall consider to be final and all proceeding shall take place in the District of Columbia, Washington, DC, subject to the above options. A judgment upon award may be entered and enforced in any court of competent jurisdiction.

## ARTICLE 8.    NOTICES

8.1    All notices or communications to be given, notice of payments to be made to documents to be delivered to the Parties hereto under the terms of this Agreement shall be faxed, hard copy delivery of documents by courier, registered mail, or hand delivered on a timely basis or via electronic mail. The Address, telephone number, facsimile number, electronic mail address for each Party named in this document shall be those provided in any contract, KYC or other formal document unless a Party hereto submits an alternative in writing to each Party hereto.

## ARTICLE 9.    GENERAL PROVISIONS

9.1 ENTIRE AGREEMENT, MODIFICATION AND WAIVER: This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter hereto and supersedes all prior agreements, understandings, negotiations, and discussions, whether written or oral save and except for a Non-Disclosure and Non-Circumvention Agreement that may have been entered. There are no warranties, representations, collateral experiments, conditions, or other agreements between the Parties whether written or oral, expressed, or implied, which affect this Agreement except as specifically set forth herein. **PCV** does hereby expressly acknowledge that no person has been authorized by the RFI to make any representation to **PCV** except as contained in this Agreement and if any such information or representation has been given or is made, PCV has not relied upon same. No supplement, modification or waiver or termination of this Agreement shall be deemed to be or shall constitute a waiver of any other provisions (whether or not similar) nor shall such waiver constitute a continuing waiver unless otherwise expressly provided. Any indulgence by or delay or omission by a Party, to exercise any right arising from any default or omissions, will not affect or impair the rights of the Parties as to any further default or omission.

9.2 INDEPENDENT ADVICE & REPRESENTATIONS: **PCV** does hereby expressly acknowledge and agree that RFI, by its agents, officers, directors, and employees have advised **PCV** to seek independent professional advice both from a lawyer and an accountant on the taxation and legal aspects of the Investment. **PCV** further acknowledges that RFI, its agents, officers, directors, and employees have not made, nor do they make any representations herein with respect to matters of taxation and profitability of the investment. **PCV** agrees that RFI, its agents, officers, directors, or employees shall not be liable to PCV for return of Cash Funds.

9.3 NON-SOLICITATION: **PCV** affirms by its signature hereunder, and under the penalty of perjury, that no agent, officer, director, or employee of RFI has solicited this investment and **PCV** further understands that this is not an offer for the purchase or sale of any securities and the PCV makes this investment of its own free will.

9.4 SOPHISTICATED INVESTOR: **PCV** confirms himself to be a highly sophisticated investor able to understand and evaluate all risks and rewards of this investment and that **PCV** has not been given any investment or legal advice by any agent, officer, director, or employee of RFI of any kind, that has resulted in a decision to make this investment and thus may not in the future claim ignorance in asserting some claim or demand. **PCV** is an accredited investor, as defined in regulation D promulgated under the 1933 Act under U.S. Law, is a prospective investor who:

9.4.1 Is a Bank as defined in section 3(a)(2) of the 1933 Act, or any Savings and Loan Association or other Institution as defined in section 3(a)(5)(A) of the 1933 Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the 1934 Act; an employee benefit plan within the meaning of title of the employee retirement income security Act of 1974, if the investment decision is made by a plan fiduciary specified in section 3(21) of such Act, which is either a Bank, Insurance company, or registered investment Advisor, or if a self-directed plan with investments decision made solely by persons that are accredited investors, or if the employee benefit plan has total assets in excess of US$5,000,000.00; or

9.4.2 Is a private business development company as defined in section 202(a)(22) of the investment advisers Act of 1940, as amended; or

9.4.3 Is an organization described in section 501(c)(3) of the internal revenue code of, as amended, a Corporation, Florida or similar business trust, or a partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of US$5,000,000.00; or

9.4.4 Any Trustee or Executive Officer of the Trust; or

9.4.5 Is a natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds US$5,000,000.00; or

Initial

Initial

9.4.6    Is a natural person who had an individual income in excess of US$200,000.00 in each of the two most recent years or joint income with the person's spouse in excess of US$300,000.00 in each of those years and has a reasonable expectation of reaching the same income level in the current year; or

9.4.7    Any Trust, with total assets in excess of US$5,000,000.00, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in rule 506(b)(2)(ii) of regulation D; or

9.4.8    Is an entity in which all the equity owners are accredited investors.

9.5    CAPITAL ORGANIZATION:  **PCV** hereunder swears and confirms under penalty of perjury that the Investment Capital does not originate from any specially designated national, blocked person, entity or embargoed country, state, nation, or entity as recognized by the Government of the United States, now or will hereafter be a party, or share benefit from this transaction and that the funds are clean, clear, unencumbered and legally earned.

9.6    THIS TRANSACTION IS INTENDED TO BE A "PRIVATE COMMERCIAL TRANSACTION":

9.6.1    Title 17 - Commodity and Securities Exchanges. Under Rule 17 CFR 240.10b-9; Prohibited representations in connection with certain offerings, contract terms and conditions are based on "best efforts" in accordance with issuer documents rendered for valuation as basis for contractual offering.

9.6.2    Pursuant to section 4(2) of the 1933 Act and/or rule 506 of regulation D promulgated thereunder and exempt from registration under the 1933 Act and various State securities Laws.

9.7    COUNTERPARTS:  This Agreement may be executed by the Parties in one or more counterparts, each one of which shall be deemed an original.  Facsimile copies and photocopies of this document that contain signatures shall be deemed to have full force and effect of the original.

9.8    FURTHER ASSURANCES:  The Parties hereto shall with reasonable diligence do all such things and provide all such reasonable assurances as may be required to consummate any transaction contemplated hereby, and each Parties shall execute and deliver such further documents or instruments required by the other party as may reasonably be necessary or desirable to affect the purpose of this Agreement and carry out its provisions.

9.9    PROPER SIGNATURE:  The signatories of this Agreement warrant that they have full personal and corporate legal authority vested in them personally and by their corporation to enter into this Agreement.  Furthermore, each Party who signs this Agreement warrants that there is no known violation of any law by him/her or it in entering into this Agreement and that material misrepresentation of any fact or capability to perform shall constitute a fraud.

9.10    LIQUIDATED DAMAGES:   As this is a best-efforts transaction and Agreement, there are no liquidated damages available.  Telephone calls to any individual or institution, which are not authorized in writing by barrister & solicitor or other duly authorized representative for RFI, shall be conclusively presumed to be of damage to RFI and shall make this Agreement voidable by RFI. Any breach of the terms of this agreement shall act as a termination of the relationship between the parties, at the election of Party, and shall cause forfeiture of any amounts, sums, commissions, fees owed by the Party to the offending party.

9.11    COURT RULING:  The Parties agree that enforcement of this Agreement shall be in the courts of mutually agreed jurisdiction. In the event that any provision of this Agreement is ruled to be unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

9.12    GOOD FAITH:  The Parties agree that good faith is of the essence of this Agreement and further agree that each shall act in good faith to the other in all matters arising in connection with any provisions of this Agreement.

9.13  FORCE MAJEURE:  The Parties hereto shall not be held liable for any failure to perform under the Force Majeure clauses as stated by the International Chamber of Commerce, Paris, France which clauses are deemed to be incorporated herein by reference.

9.14  TIME:  Time shall be of the essence of this Agreement.

9.15  INUREMENT:  This Agreement shall inure to the benefit of the Parties hereto and their respective heirs, executors, trustees, successors and permitted assigns.

10  BREACH AND PENALTIES:

10.1  If either Party breaches this Agreement, unless otherwise provided herein, the breaching Party shall have ten (10) business days to cure the breach. If the breach is not cured within the time allotted, the Agreement may be voided by the non-breaching Party.

11  WAIVER OF RIGHTS AGAINST CERTAIN PARTIES

11.1      **PCV** hereby waives all rights to pursue any action or to claim any liability or obligation on the part of Berone Capital Fund, LP, RBC Capital Markets or Signature Bank for lack of performance related to this Agreement and to any proposed profits to be generated under this Agreement.  All rights have been waived since none of the stated entities are party to this Agreement or have any responsibilities under this Agreement that pertain to **PCV.  PCV** has not waived any rights, against any party, with respect to obtaining the return of their initial investment capital.

[The balance of this page has been intentionally left blank and the signature page is to follow.]

IN WITNESS WHEREOF:

The undersigned have read this document carefully and initialed all of the pages of this Agreement and fully understand and agree what its execution constitutes an acceptance of all of its mutually protective covenants, terms and conditions, and is lawfully binding upon the "Parties", and their legal heirs, successors, representatives and assignees. The Parties hereto have executed this Agreement as of this 3 October 2022 2022 to be effective on and as of the date first above written.

WITH FULL AUTHORITY AGREED AND ACCEPTED

FOR AND ON BEHALF OF:
**REIGN FINANCIAL INTERNATIONAL, INC.**
Registration Number: 6276591

Acknowledged and signed:

By: _____
Authorized signatory
**Giorgio Johnson**
Its Chief Executive Officer
USA Passport No. 530948922

"I have the authority to bind this Agreement"

FOR AND ON BEHALF OF:

**Prime Capital Ventures, LLC**
Registration Number: 6471960

Acknowledged and signed:

By: _____
Authorized signatory
Kris D. Roglieri
its CEO
USA Passport No. 549088988

"I have the authority to bind this Agreement"

## ADDENDUM 1

| | |
|---|---|
| **PAYMASTER NAME AND ADDRESS** | Aaron Etra,Esq.<br>445 Park Avenue – 9th floor, New York, NY 10022 |
| **PASSPORT NUMBER** | 5 5 0 0 6 2 1 2 1   USA |
| **PAYMASTER TELEPHONE/FAX** | +1(917) 856-3500 |
| **PAYMASTER E-MAIL ADDRESS** | aaron@etra.com |
| **BANK NAME** | TBA |
| **BANK ADDRESS** | TBA |
| **BANK OFFICER** | TBA |
| **BANK OFFICER TELEPHONE/FAX** | TBA |
| **BANK OFFICER E-MAIL ADDRESS** | TBA |
| **SWIFT CODE** | TBA |
| **IBAN CODE** | TBA |
| | |
| **ACCOUNT NAME** | TBA |
| **ACCOUNT HOLDER'S ADDRESS** | TBA |
| **ACCOUNT HOLDER'S TELEPHONE** | +1(917) 856-3500 |
| **CURRENCY** | USD |
| **SPECIAL INSTRUCTIONS** | **WIRE TRANSFERS:** All Wire transfers shall incorporate below Text Message and pre-advised via e-mail  to aaron@etra.com , with a copy of Bank Wire Transfer Slip shall be e-mailed to: aaron@etra.com  for legal verification and required documentation pursuant to mandated Patriot Act/Banking Regulations with one (1) original contract copy to be filed with Participating Banks. |
| **REQUIRED INSTRUCTIONS** | All transfers of FUNDS shall state:<br><br>1) **ORIGIN: X**"FUNDS ARE CLEAN & CLEAR, OF NON-CRIMINAL ORIGIN AND ARE PAYABLE IN CASH IMMEDIATELY UPON RECEIPT BY BENEFICIARY'S BANK."<br><br>2) **CONTRACTUALLY EARNED FEES:** "THE CLEAN, CLEARED, LIEN FREE & UNENCUMBERED FUNDS, EARNED AS FINANCIAL CONSULTING FEES ON COMMERCIAL ENTERPRISES OF NON-CRIMINAL AND NON- TERRORIST ORIGINS, KNOWN BY BUYER AND/OR SELLER."<br><br>3) **PAYMENT GUARANTEE:** "FUNDS ARE CONTRACTUALLY GUARANTEED FOR PAYMENT THROUGH THE MASTER PAYMASTER ACCOUNT, AS LISTED HEREIN."<br><br>4) **SETTLEMENT:** "FUNDS ARE FOR SAME DAY PAYMENT, FULL CREDIT AND IMMEDIATE SETTLEMENT WITHOUT INTERRUPTION, DELAYS, OR PROTEST." |
| **FOR THE BENEFIT OF:** | Prime Capital Ventures, LLC |

Initial _AO_                    Page **10** of **10**                    Initial _LY_