UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PRIME CAPITAL VENTURES, LLC,

                Plaintiff,

-against-

REIGN FINANCIAL INTERNATIONAL, INC.,
GIORGIO JOHNSON, GARY MILLS AND
MARTIN KARO,

                Defendants.
_____

**FIRST AMENDED COMPLAINT**

Civil Case No.:1:23-cv-00207
(FJS/DJS)
Date Filed: March 9, 2023

      Plaintiff, Prime Capital Ventures, LLC ("Prime"), by and through its attorneys, Girvin & Ferlazzo, P.C., as and for its First Amended Complaint, filed as of right pursuant to FRCP 15(a)(1)(a), against Defendant Reign Financial International, Inc. ("Reign"), Giorgio Johnson ("Johnson"), Gary Mills ("Mills") and Martin Karo ("Karo") (Reign, Johnson, Mills and Karo are collectively referred to herein as "Defendants") states and alleges as follows:

## PARTIES

      1.     Prime is a limited liability corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Albany County, New York.

      2.     Prime is a citizen of the State of New York because Prime's sole member, Kris Roglieri, is a resident of the State of New York.

      3.     Reign is a foreign business corporation organized and existing under the laws of the State of Delaware with its principal place of business at 8 The Green, Suite R, Dover, Delaware.

      4.     Reign is a citizen of Delaware because Delaware is both the state of its incorporation and the location of its principal place of business.

      5.     At all times relevant to this action, Reign has conducted business in the State of

1

New York and within the boundaries of the Northern District of New York.

6. Johnson is a citizen of the state of Oregon.

7. Mills is a citizen of the state of Florida.

8. Karo is a citizen of the state of Pennsylvania.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) insofar as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and no Defendant is a citizen of the same state as the Plaintiff.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

11. The instant action seeks the recovery of $20,000,000.00 (the "Investment Funds") based upon breach of contract and due and a conspiracy to defraud Prime orchestrated by Reign's Chief Executive Officer, Johnson, Reign's Chief Operating Officer, Mills and Karo.

12. Defendants induced Prime to deposit the Investment Funds with non-party hedge fund Berone Capital Fund, L.P. ("Berone"), under the pretense that such funds would be used by Reign to participate in a transaction platform involving arbitrage of international commercial private placement programs (the "Program").

13. Under this pretense, and based on additional representations by Defendants, Prime entered into a "Trade Agreement for Prime Capital Ventures, LLC No. PCV-RFI-20M-092022", dated October 3, 2022 (the "Trade Agreement") and transferred the Investment Funds to Berone. A copy of the Trade Agreement is attached hereto as Exhibit A.

14. Instead of taking Prime into the Program as agreed, Defendants converted the Investment Funds by collateralizing those funds in a transaction wholly unrelated to the Program

– and without Prime's knowledge or consent – whereby Reign took out a line of credit against Prime's account at Barone and absconded with more than $12,000,000 dollars in loan proceeds (the "Fraudulent Loan Proceeds"), giving rise to the instant claims for fraud, fraudulent concealment, breach of contract and conversion.

## **FACTS**

15. Beginning in September of 2022, through emails and telephone calls to Prime's sole member, Kris Roglieri ("Roglieri") at Prime's Albany, New York office, Mills began soliciting Prime's participation in the Program.

16. According to Mills, Reign, through its pre-existing relationship with Berone, could gain access to a commercial trading platform that would allow it to arbitrage international commercial private placement programs.

17. According to Mills, once Prime deposited its funds with Berone, Reign would open an account with BNP Paribas, an international bank, and, Reign would utilize that account to show proof of the funds necessary to enter into the commercial transactions by utilizing Swift MT799 confirmations.

18. A Swift MT799 is a type of message sent between banks engaged in international trade to confirm funds or proof of deposits.

19. On October 3, 2022, the Parties executed the Trade Agreement which conformed to the description of the Program as relayed to Roglieri by Mills.

20. The Trade Agreement incorporates by reference a Joint Venture Agreement dated September 28, 2022, between Reign and Prime (the "JVA") and an Escrow Agreement, also dated September 28, 2022, between Reign, Prime and a New York Attorney, Aaron Aetra, Esq. (the "Escrow Agreement").  Copies of the JVA and Escrow Agreement are attached hereto as Exhibits

B and C respectively.

21. The Agreement, JVA, and Escrow Agreement were the subject of extensive telephone and email negotiations between Mills and Roglieri.

22. At all relevant times, Roglieri conducted these negotiations from within the jurisdictional boundaries of the Northern District of New York.

23. Together the Trade Agreement, JVA and Escrow Agreement contemplated an ongoing joint venture between Reign and Prime to take advantage of various opportunities within the Program.

24. Pursuant to Paragraph 1.1 of the Trade Agreement, the purpose of the Agreement was to "invest funds in the hedge fund [Berone] so that the hedge fund can provide [Reign] the ability to create an account at BNP Paribas and take said account in to the Program[]."

25. Pursuant to Paragraph 3.4 of the Trade Agreement, Paragraph 1.1 of the Escrow Agreement, and Paragraph 2.13 of the JVA, the anticipated profits yielded from the Program were to be held and disbursed by New York attorney Aaron Aetra, Esq., who was to act as "paymaster" and "escrow agent." According to Addendum 1 of the Trade Agreement, Aaron Aetra was to perform these services from his office located at 445 Park Avenue – 9th floor, New York, New York.

26. Pursuant to Paragraph 2.1.6 of the Trade Agreement, Prime reserved the right to "cancel its contract with Berone and [Reign] at any time while under th[e Trade Agreement] due to non-performance of [the] program. . . ." and was further entitled to a return of the Investment Funds within 5 to 7 business banking days "without penalty."

27. Pursuant to Paragraph 1.5 of the Trade Agreement, "[o]n termination or cancellation of the program, for any reason" or in the event that the Program "did not perform"

Reign was required to take "immediate steps" to "unwind the BNP account and have the hedge fund release [Prime's Investment Funds] back to their designated account at any banking institution they should designate."  Further, pursuant to Paragraph 1.5 of the Agreement, Reign was obligated to ensure that the Investment Funds were returned within 5-7 banking days from the receipt of a demand for the same from Prime.

28. On or about October 4, 2022, Johnson emailed Roglieri to ask whether Prime would like to participate in a $20,000,000 business loan transaction with an entity called Quattro Capital (the "Quattro Transaction").

29. According to information Johnson provided to Roglieri, the Quattro Transaction was to be partly overseen by Karo, who was identified as the "Escrow Attorney."

30. On October 6, 2023, after reviewing the documents related to the Quattro Transaction, Roglieri informed Johnson and Mills that Prime was not interested in the transaction and that it had concerns about – and would not be involved in – any transaction involving Karo.

31. Specifically, Roglieri informed Johnson, Mills and Karo that the documents associated with the Quattro Transaction were internally inconsistent, lacked crucial elements necessary to ensure the protection of Prime's proposed investment, and contained numerous typos.

32. Roglieri separately alerted Johnson to the fact that an internet search related to Karo revealed that Karo had been sued for his involvement in a separate transaction, and that this lawsuit included allegations of fraud.

33. Upon information and belief the Quattro Transaction was not a real business opportunity, and instead, was an attempt by Reign, Johnson, Mills and Karo to defraud Prime.

34. On October 10, 2022, Prime emailed Berone and Mills requesting that Berone and Reign assure Prime that if the Program failed, Reign would return the entire $20,000,000 of

5

Investment Funds.

35. Mills responded that "Yes, it would be the whole $20,000,000 that is returned" and further stated that the funds could be returned in no more than two weeks.

36. Mills also assured Prime that unwinding the account at BNP Paribas, in order to facilitate the return of the Investment Funds, would be Reign's responsibility.

37. On or about October 21, 2022, and pursuant to the wire instructions provided in the JVA, Prime wired the Investment Funds from its New York State CitiBank account to a New York State Signature Bank account.

38. Upon information and belief, there never was a Program and/or Reign never intended to take Prime into the Program. Defendants, instead concocted the Program as part of a conspiracy to induce Prime to transfer the Investment Funds to Berone, so that Defendants could use the Investment Funds as collateral to obtain the Fraudulent Loan Proceeds.

39. Mills intentionally misrepresented the existence of the Program and/or its intent to take Prime into the Program, and that Prime's money would be returned in the event the Program failed to perform, in order to induce Prime to transfer the Investment Funds to Berone.

40. On or about November 1, 2022, without Prime's knowledge or consent, Reign entered into a line of credit agreement with the Royal Bank of Canada, whereby, Prime's account at Barone was collateralized at the direction of Reign, allowing Reign to take out an $12,000,000 line of credit.

41. On or about November 7, 2022, without ever having informed Prime that its funds were collateralized, Reign caused the Fraudulent Loan Proceeds (totaling $12,000,000) to be transferred to Karo.

42. Pursuant to Paragraph 1.4 of the Trade Agreement, Reign was not authorized to use Prime's Investment Funds for any purpose other than to participate in the Program.

43. On November 18, 2022, Roglieri emailed Mills stating that "[t]omorrow will mark 4 weeks since we made the $20,000,000 deposit" and inquiring whether "funds [had] been set up on the BNP Paribas side" and or whether the contract to enter the Program had been signed.

44. On November 18, 2022, after Reign had already collateralized the Investment Funds and transferred the Fraudulent Loan Proceeds to Karo, Mills responded that he was "in the process of negotiating the contract" and otherwise assured Roglieri that Reign was actively communicating with the Program platform and was actively working on bringing Prime's Investment Funds into the Program.

45. On November 30, 2022, Mills notified Roglieri that it had signed a trade contract with the Program platform but was waiting a Swift MT799 verification from BNP Paribas to officially start the Program.

46. Upon information and belief, no such contract was ever entered, no account at BNP Paribas was ever created and Reign never requested a Swift MT799.

47. Thereafter, between November 30, 2022, and January 24, 2023, Roglieri contacted Mills and Johnson on multiple occasions to inquire whether the Swift MT799 confirmation had been delivered to the Program platform. Reign repeatedly acknowledged that while the required Swift MT799 confirmation had not yet been delivered, it was continuing to work on the transaction.

48. On January 24, 2023, Prime notified Mills and Johnson, pursuant to Paragraph 2.1.6 of the Trade Agreement, that it was cancelling the Trade Agreement and demanded that Reign secure the return of its Investment Funds.

49. During discussions with Johnson regarding the return of the Investment Funds, Johnson acknowledged it could not secure the return of Prime's Investment Funds because it had improperly co-mingled Prime's Investment Funds with Reign's own funds or the funds of its other clients and leveraged those funds in connection with a transaction not related to the Program.

50. Johnson claimed that Reign was actively working to unwind the unrelated transaction, and that it would return the Investment Funds as soon as possible.

51. On February 7, 2023, Prime's in-house counsel emailed Johnson demanding return of the funds and informing Johnson that if the funds were not returned by February 10, 2023, Prime would commence a lawsuit in the Northern District of New York.

52. On February 9, 2023, Reign's general counsel responded, in pertinent part:

> Please be assured that Reign is doing everything it can to resolve this matter as expeditiously as possible. Reign is taking the necessary steps to unravel the transaction so that Prime Capital's funds can be returned. Mr. Johnson and our attorneys are scheduled to meet this Friday, February 10, 2023, with the parties that are directly in control of releasing funds that will effect the return of Prime Capital's funds. We had sent those parties a demand letter for the return of Reign's capital contribution, and the meeting this Friday is the result of that demand. We are hopeful that we will have a resolution tomorrow and that Prime Capital's funds will be returned soon thereafter.

53. On February 13, 2023, Reign's general counsel informed Prime via email that it expected the Investment Funds to be released on February 14, 2023.

54. On February 14, 2023, Johnson informed Roglieri, that the wire had been sent and should be received by Berone shortly.

55. No such wire was ever sent.

56. When the wire did not arrive, Roglieri confronted Mills and Johnson, who assured Roglieri that the wire was held up pending receipt of a "confirmation form."

57. To date, the wire has not been sent, and Prime's Investment Funds have not been

returned.

58. But for Reign's fraud, fraudulent concealment, conversion and/or breach of the parties' Trade Agreement, Prime would have been able to earn interest on the Investment Funds through other investment opportunities.

59. By reason of the foregoing, Prime has been damaged by Defendants in an amount to be determined at trial, but no less than $20,000,000.00, plus consequential damages in an amount to be determined at trial, statutory interest from the date(s) of breach, and costs.

60. Pursuant to Paragraph 6.4.2 of the Trade Agreement, Prime is also entitled to recover its attorneys' fees and costs in this action from Reign.

## FIRST CAUSE OF ACTION: FRAUD

**(All Defendants)**

61. Plaintiff adopts by reference and incorporates herein the allegations set forth above.

62. Reign, acting by and through its COO Mills, and at the direction of, or with the full knowledge of Johnson, knowingly, and falsely represented to Prime that it would utilize the Investment Funds in connection with the Program to induce Prime to place the Investment Funds with Barone where Reign could then collateralize the Investment Funds to obtain the Fraudulent Loan Proceeds.

63. In reality, Johnson, Mills and Reign were aware at the time Mills made these material misrepresentations to Prime that there was no Program and/or that Reign had no intention to bring Prime into the Program, and instead, Reign, Mills and Johnson intended at all times, to utilize Prime's Investment Funds to obtain the Fraudulent Loan Proceeds.

64. Prime's reliance on these statements was justified by the verbal representations

made by Mills regarding the nature of the Program, Mills assurances that the entire amount of the Investment Funds would be returned within two weeks in the event the Program did not perform, and the mutual promises and obligations made in the parties Trade Agreement, JVA and Escrow Agreements.

65. At all relevant times, Reign, Johnson, Mills and Karo acted in concert to defraud Prime of the Investment Funds. Reign, acting by and through its officers, Mills and Johnson, overtly solicited Prime to invest in false business opportunities, including the Program and the Quattro Transaction, in order to obtain the Fraudulent loan Proceeds.

66. Reign's corporate officers, Mills and Johnson, are personally liable to Prime for Prime's damages because of their actual knowledge of and/or personal participation in the scheme to obtain the Fraudulent Loan Proceeds.

67. Karo is liable to Prime as a result of his role in the scheme, including for aiding and abetting the fraud and accepting the Fraudulent Loan Proceeds.

68. Defendants action evince a high degree of moral turpitude and demonstrate such wanton dishonesty as to imply a criminal indifference to their civil obligations.

69. As a result of Prime's reliance on the material misrepresentations of Reign, Mills and Johnson, Prime has been injured in an amount to be determined at trial, but not less than $20,000,000, plus punitive and consequential damages in an amount to be determined at trial, together with, costs and such other and further relief the Court deems appropriate and necessary.

## **SECOND CAUSE OF ACTION: FRAUDULENT CONCEALMENT**

**(Defendants Reign, Mills and Johnson)**

70. Plaintiff adopts by reference and incorporates herein the allegations set forth above.

71. On and after November 7, 2023, after Defendants obtained the Fraudulent Loan Proceeds Reign, Johnson and Mills intentionally concealed the fraud, by falsely claiming that they were still working to take Prime's Investment Funds into the Program, in order to deter Prime from discovering their fraud.

72. As a result of this fraudulent concealment, Prime did not seek a return of its Investment Funds until well after any chance of recovering the Fraudulent Loan Proceeds had passed.

73. As a result of Reign, Johnson and Mills' intentional concealment, Reign was injured in an amount to be determined at trial, but not less than $20,000,000, plus punitive and consequential damages in an amount to be determined at trial, together with, costs and such other and further relief the Court deems appropriate and necessary.

## THIRD CAUSE OF ACTION: BREACH OF CONTRACT

### (Defendant Reign)

74. Plaintiff adopts by reference and incorporates herein the allegations set forth in paragraphs 1-10, 15-27, 37, 40-43, 45 and 47-57 above.

75. Pursuant to the Trade Agreement, upon cancellation of the Trade Agreement and due demand from Prime, Reign was required to take steps to secure the return the Investment Funds.

76. Despite cancellation of the Trade Agreement and despite due demand, Reign failed to take the necessary steps to return the Investment Funds.

77. Accordingly, Reign has breached the Trade Agreement by failing to take the necessary steps to secure the return the Investment Funds to Prime.

78. In addition, Reign has breached the Trade Agreement by comingling Prime's

Investment Funds with its own funds and or the funds of other investors and using Prime's Investment Funds to participate in an investment that was not authorized by the Trade Agreement.

79. By reason of the foregoing, Prime has been damaged by Reign's breach of contract in an amount to be determined at trial, but not less than $20,000,000.00, plus consequential damages in an amount to be determined at trial, together with statutory interest from the date(s) of breach, costs and such other and further relief the Court deems appropriate and necessary.

80. Further, Pursuant to Paragraph 6.4.2 of the Trade Agreement, Prime is entitled to recover its attorneys' fees and costs in this action from Reign.

## FOURTH CAUSE OF ACTION: CONVERSION

### (Defendant Reign)

81. Plaintiff adopts by reference and incorporates herein the allegations forth in paragraphs 1-10, 15-27, 37, 40-43, 45 and 47-57 above.

82. On or about October 21, 2022, pursuant to the Trade Agreement and JVA, Prime wired the Investment Funds to Berone for use by Reign in the Program.

83. At all times, Prime had a superior right of possession in the Investment Funds over that of Reign.

84. The Investment Funds were designated for a particular purpose, namely for use in the Program

85. Pursuant to Paragraph 1.4 of the Trade Agreement, Reign was not authorized to comingle Prime's Investment Funds with its own funds or that of any other investors or to aggregate those funds for purposes of collateralizing the same.

86. According to statements made by Reign's officers and directors to Prime's sole member on or after it demanded the return of its Investment Funds, in contravention of Paragraph

1.4 of the Trade Agreement, Reign co-mingled Prime's Investment Funds with its own funds or the funds of its other clients and leveraged those funds in connection with a transaction not related to the Program

87. Reign did not have a legal right to so-encumber the Investment Funds.

88. These actions were taken without the authority, consent, or knowledge of Prime.

89. As a result of these unauthorized actions, Reign interfered with Prime's right of possession in the funds.

90. As a result of the foregoing, Prime sustained and continues to sustain losses by reason of the Investment Funds, lost investment opportunities and interest it could have earned had the funds been timely returned.

91. Reign is therefore liable to Prime for the full balance of the funds they converted, totaling $20,000,000.00, plus consequential damages in an amount to be determined at trial, as well as any pre- and post-judgment interest to which Prime is entitled by law, and such other and further relief as the Court deems appropriate and necessary.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Prime Venture Capital, LLC, demands Judgment against Defendant Reign Financial International, Inc., as follows:

On the First Cause of Action, a money judgment against Defendants Reign Financial International, Inc., Gary Mills, Giorgio Johnson and Martin Karo for fraud in an amount to be determined at trial, but not less than $20,000,000.00, plus punitive and consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary;

On the Second Cause of Action, a money judgment against Defendants Reign Financial

13

International, Inc., Gary Mills and Giorgio Johnson for fraudulent concealment in an amount to be determined at trial, but not less than $20,000,000.00, plus punitive and consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary;

On the Third Cause of Action, a money judgment against Defendant Reign Financial International, Inc. for breach of contract in an amount to be determined at trial, but not less than $20,000,000.00, plus consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary;

On the Fourth Cause of Action, a money judgment against Defendant Reign Financial International, Inc. for conversion in an amount to be determined at trial, but not less than $20,000,000.00, plus consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary.

Dated: March 9, 2023
      Albany, New York

Respectfully submitted,

By:_____
Daniel S. L. Rubin, Esq.
Bar Roll No.: 518414
Patrick J. Fitzgerald, Esq.
Bar Roll No.: 511103
Girvin & Ferlazzo, PC
*Attorneys for Plaintiff*
20 Corporate Woods Boulevard
Albany, New York 12211
Tel:    518-462-0300
Fax:   518-462-5037
Email: dsr@girvinlaw.com
Email: pjf@girvinaw.com