**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PRIME CAPITAL VENTURES, LLC,

               Plaintiff,

      v.

REIGN FINANCIAL INTERNATIONAL,
INC., GIORGIO JOHNSON, GARY MILLS
AND MARTIN KARO

             Defendants.

---

Case No. 23-cv-207 (FJS/DJS)

## <u>DEFENDANTS' COMBINED MEMORANDUM OF LAW</u>
## <u>IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION,</u>
## <u>OR, IN THE ALTERNATIVE, TO DISMISS THE AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

   I.   The Court Lacks Personal Jurisdiction Over Karo ................................................. 2

      A.  The Court Cannot Exercise General Personal Jurisdiction Over Karo ........................... 3

      B.  The Court Lacks Specific Personal Jurisdiction Over Karo ............................................ 3

   II.  Prime Must Submit Its Claims To Arbitration ..................................................... 7

      A.  Legal Standard ............................................................................................................... 7

      B.  Prime's Claims Against Reign Financial Are Subject To The Agreement's Arbitration Clause ........................................................................................................................... 9

      C.  Prime's Claims Against The Individual Defendants Are Subject To The Agreement's Arbitration Clause ........................................................................................................ 11

          i.   The Claims Against Defendants Johnson And Mills Must Be Arbitrated ................ 12

          ii.  The Claim Against Karo Must Be Arbitrated ........................................................... 14

   III.  In The Alternative, The Court Should Dismiss The Amended Complaint ..................... 15

      A.  The Court Should Dismiss The Fraud And Fraudulent Concealment Claims .............. 15

          i.   The Fraud Claims Are Inadequately Detailed and Duplicative ................................. 15

          ii.  The Fraudulent Concealment Claim Fails To Allege A Duty ................................... 20

      B.  The Court Should Dismiss The Breach Of Contract Claim ......................................... 21

          i.   Prime Agreed To Limit Reign's Liability For The Return Of Funds ........................ 22

          ii.  Prime Fails To Plausibly Allege A Contractual Provision Reign Breached ............. 23

      C.  The Court Should Dismiss The Conversion Claim As Duplicative Of The Breach Of Contract Claim ............................................................................................................. 24

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ................................................................. 17

*Aetna Cas. & Sur. Co. v. Merchants Mut. Ins. Co.*,
  84 A.D.2d 736 (App. Div. 1st Dep't 1981) ............................................. 20

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
  98 F.3d 25 (2d Cir. 1996) ................................................................... 5

*Aiken v. Rimkus Consulting Grp. Inc.*,
  333 F. App'x 806 (5th Cir. 2009) ........................................................ 21

*Application of Conticommodity Servs. Inc.*,
  613 F.2d 1222 (2d Cir. 1980) .............................................................. 8

*Assembly Point Aviation, Inc. v. Richmor Aviation, Inc.*,
  2013 WL 12174045 (N.D.N.Y. Sept. 3, 2013) ................................... 24, 25

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  171 F.3d 779 (2d Cir. 1999) ................................................................ 4

*Bensadoun v. Jobe-Riat*,
  316 F.3d 171 (2d Cir. 2003) ................................................................ 7

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007) ................................................................ 4

*Birmingham Assocs. Ltd. v. Abbott Labs.*,
  547 F. Supp. 2d 295 (S.D.N.Y. 2008) .................................................. 13

*Bologna v. Allstate Ins. Co.*,
  138 F. Supp. 2d 310 (E.D.N.Y. 2001) .................................................. 18

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
  98 F.3d 13 (2d Cir. 1996) .................................................................. 17

*Brown v. City of Philadelphia*,
  2010 WL 4484630 (E.D. Pa. Nov. 9, 2010) ........................................... 10

*Carroll v. Leboeuf, Lamb, Greene & MacRae, LLP*,
  374 F. Supp. 2d 375 (S.D.N.Y. 2005) .................................................. 13

*Chapin Home for the Aging v. McKimm*,
  2014 WL 12883697 (E.D.N.Y. Aug. 7, 2014) ..................................................... 5, 6

*Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*,
  2020 WL 620294 (C.D. Cal. Jan. 9, 2020) ........................................................ 11

*Chloé v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ............................................................................ 7

*Clark v. Brownell*,
  110 N.Y.S.3d 504 (N.Y. City Ct. 2018) ........................................................... 24

*Command Cinema Corp. v. VCA Labs, Inc.*,
  464 F. Supp. 2d 191 (S.D.N.Y. 2006) .............................................................. 25

*Confido Advisors, LLC v. USAA Real Est. Co.*,
  2019 WL 4747705 (S.D.N.Y. Sept. 30, 2019) ................................................. 21

*Deng v. Frequency Elecs., Inc.*,
  2022 WL 16923999 (E.D.N.Y. Nov. 14, 2022) ................................................ 8

*Devinsky v. Kingford*,
  2008 WL 857525 (S.D.N.Y. Mar. 31, 2008) .................................................... 6

*Dill v. JPMorgan Chase Bank, N.A.*,
  2020 WL 4345755 (S.D.N.Y. July 29, 2020) ................................................... 10

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
  822 F.2d 1242 (2d Cir. 1987) .......................................................................... 19

*Doe v. Syracuse Univ.*,
  2022 WL 798058 (N.D.N.Y. Mar. 16, 2022) ................................................... 24

*Doe v. Trump Corp.*,
  6 F.4th 400 (2d Cir. 2021) ............................................................................... 11

*EQT Infrastructure Ltd. v. Smith*,
  861 F. Supp. 2d 220 (S.D.N.Y. 2012) .............................................................. 16

*Eternity Global Master Fund Ltd. v Morgan Guar. Trust Co.*,
  375 F.3d 168 (2d Cir. 2004) ............................................................................ 17

*Evans Energy Partners, LLC v. Seminole Tribe of Fla., Inc.*,
  561 F. Supp. 3d 1171 (M.D. Fla. 2021)............................................................ 3

*Excel Realty Advisors, L.P. v. SCP Capital, Inc.*,
    2010 WL 5172417 (N.Y. Sup. Ct. Dec. 02, 2010) ............................................ 19, 20

*Fisser v. International Bank*,
    282 F.2d 231 (2d Cir. 1960) ........................................................................ 11

*Fort Miller Co. v. Am. Transp., Inc.*,
    2013 WL 773108 (N.D.N.Y. Feb. 28, 2013) ..................................................... 8

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
    140 S. Ct. 1637 (2020) ............................................................................... 11

*Gemmon LLC v. Becker*,
    148 A.D.3d 579 (App. Div. 1st Dep't 2017) .................................................... 19

*Gilbert v. Wilson*,
    821 F. Supp. 857 (N.D.N.Y. 1993) ................................................................. 3

*Gilman Bros. Inc. v. Peat, Marwick, Mitchell & Co.*,
    1978 WL 1103 (S.D.N.Y. May 15, 1978) ......................................................... 20

*Government Employees Ins. Co. v. Grand Medical Supply, Inc.*,
    2012 WL 2577577 (E.D.N.Y. July 4, 2012) ...................................................... 13

*Greene v. Kabbalah Ctr. Int'l, Inc.*,
    2022 WL 4006903 (E.D.N.Y. Sept. 1, 2022) .................................................... 14

*Hall v. Tressic*,
    381 F. Supp. 2d 101 (N.D.N.Y. 2005) ............................................................ 18

*Harrington v. Atl. Sounding Co., Inc.*,
    602 F.3d 113 (2d Cir. 2010) ......................................................................... 8

*Hong Wang v. Precision Extrusion, Inc.*,
    2018 WL 3130589 (N.D.N.Y. June 26, 2018) ................................................... 8

*HSH Nordbank AG New York Branch v. Street*,
    2012 WL 2921875 (S.D.N.Y. July 18, 2012) .................................................... 7

*HSH Nordbank AG v. Barclays Bank PLC*,
    986 N.Y.S.2d 866 (N.Y. Sup. 2014) ............................................................... 20

*In re Platinum-Beechwood Litig.*,
    400 F. Supp. 3d 2 (S.D.N.Y. 2019) ............................................................... 20

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ................................................................ 19

*In Re Renewable Energy Grp. Sec. Litig.*,
  2022 WL 14206678 (2d Cir. Oct. 25, 2022) ...................................................... 18

*Jerusal*em *NY Enters. LLC v. Huber Erectors & Hoisting, LLC*,
  2021 WL 4711821 (E.D.N.Y. Oct. 9, 2021) ......................................................... 6

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ............................................................................... 9

*Katz v. Cello P'ship*,
  794 F.3d 341 (2d Cir. 2015) ............................................................................. 15

*Keyes v. Ayco Co., L.P.*,
  2018 WL 6674292 (N.D.N.Y. Dec. 19, 2018) .................................................... 12

*Kidney v. Webster*,
  2017 WL 758508 (N.D.N.Y. Feb. 27, 2017) ........................................................ 3

*King v. AptDeco, Inc.*,
  2022 WL 4448679 (S.D.N.Y. Sept. 22, 2022) .............................................. 12, 14

*LaRoss Partners, LLC v. Contact 911 Inc.*,
  874 F. Supp. 2d 147 (E.D.N.Y. 2012) ............................................................... 25

*Lefkowitz v. Bank of New York*,
  676 F. Supp. 2d 229 (S.D.N.Y. 2009) (dismissing ............................................ 21

*Linea Nuova, S.A. v. Slowchowsky*,
  62 A.D.3d 473 (App. Div. 1st Dep't 2009) ....................................................... 17

*Lipson v. Birch*,
  46 F. Supp. 3d 206 (E.D.N.Y. 2014) ................................................................... 5

*Martinez v. Agoda Co. Pte. Ltd.*,
  2023 WL 2254550 (S.D. Cal. Feb. 27, 2023) ...................................................... 3

*Matter of Part 60 Put-Back Litig.*,
  36 N.Y.3d 342 (2020) ....................................................................................... 23

*McAllister Bros., Inc. v. A & S Transp. Co.*,
  621 F.2d 519 (2d Cir. 1980) ............................................................................. 11

*Medequa LLC v. O'Neill & Partners LLC*,
  2022 WL 3227814 (S.D.N.Y. Aug. 10, 2022) ........................................................ 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .................................................................................................. 11

*Morgan v. Sundance, Inc.*,
  142 S. Ct. 1708 (2022) ............................................................................................... 8

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ....................................................................................... 8

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991) ..................................................................................... 18

*Oldroyd v. Elmira Savings Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998) ......................................................................................... 9

*P. T. Bank Cent. Asia v. ABN AMRO Bank N.V.*,
  301 A.D.2d 373 (App. Div. 1st Dep't 2003) ............................................................ 21

*Palmer v. Cora Italian Specialties, Inc.*,
  2022 WL 675707 (N.D.N.Y. Mar. 7, 2022) ............................................................... 6

*Peluso v. Tauscher Cronacher Pro. Engineers, P.C.*,
  270 A.D.2d 325 (App. Div. 2nd Dep't 2000) ........................................................... 23

*Regnante v. Sec & Exch. Officials*,
  134 F. Supp. 3d 749 (S.D.N.Y. 2015) ...................................................................... 19

*Ross v. Am. Exp. Co.*,
  547 F.3d 137 (2d Cir. 2008) ..................................................................................... 15

*Ross v. Am. Express Co.*,
  478 F.3d 96 (2d Cir. 2007) ....................................................................................... 12

*Ruhrgas AG v. Marathon Oil Co.*,
  526 U.S. 574 (1999) .................................................................................................... 2

*Segal v. Gordon*,
  467 F.2d 602 (2d Cir. 1972) ..................................................................................... 18

*Senisi v. John Wiley & Sons, Inc.*,
  2015 WL 256094 (S.D.N.Y. Jan. 21, 2015) ............................................................... 8

vi

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ........................................................................... 17

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007) ......................................................................................... 2

*Soja v. Keystone Trozze, LLC*,
    106 A.D.3d 1168 (App. Div. 3rd Dep't 2013) .............................................. 23

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (1992) ..................................................................................... 23

*Spinelli v. N.F.L.*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ............................................................... 24

*Stair v. Calhoun*,
    2009 WL 792189 (E.D.N.Y. Mar. 23, 2009) ................................................ 20

*Tamam v. Fransabank Sal*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010) ............................................................ 6

*Telecom Int'l Am., Ltd. v. AT & T Corp.*,
    280 F.3d 175 (2d Cir. 2001) ........................................................................... 16

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
    64 F.3d 773 (2d Cir. 1995) ............................................................................. 11

*U.S. ex rel. Branigan v. Bassett Healthcare Network*,
    234 F.R.D. 41 (N.D.N.Y. 2005) ............................................................... 17, 18

*Webb v. Wellins*,
    1999 WL 31113 (N.D.N.Y. Jan. 21, 1999) ................................................... 8, 9

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990) ........................................................................... 18

*Xerox Corp. v. JCTB Inc.*,
    2018 WL 5776423 (W.D.N.Y. Nov. 2, 2018) ................................................. 16

*Yates v. United States*,
    574 U.S. 528 (2015) .......................................................................................... 9

**Statutes**

9 U.S.C. § 1 ............................................................................................................... 8

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................*Passim*

Fed. R. Civ. P. 12(b) ................................................................................... 1, 2

N.Y. C.P.L.R. § 302(a) ........................................................................ 4, 5, 6, 7

Defendants Reign Financial International, Inc. ("Reign Financial" or "Reign"), Giorgio Johnson ("Johnson"), Gary Mills ("Mills"), and Martin Karo ("Karo," together with Johnson and Mills, the "Individual Defendants," and collectively with Reign Financial, the "Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration and stay this matter, or, in the alternative to dismiss Plaintiff Prime Capital Ventures, LLC's ("Plaintiff" or "Prime") Amended Complaint (ECF No. 4), pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (b)(6).

## INTRODUCTION

This case is a commercial dispute between two sophisticated corporate entities that arises out of a trade agreement (the "Agreement") that Prime allegedly entered into with Reign Financial. As alleged, Prime made a substantial investment through Reign pursuant to the terms of the Agreement. That investment, Prime claims, was supposed to fund arbitrage transactions through a hedge fund called Berone Capital Funds ("Berone"). The Amended Complaint alleges that Reign never invested the funds in that manner and therefore breached that Agreement, and Prime is now attempting to claw back its investment funds. The Amended Complaint fails to disclose, however, that the Agreement contains an arbitration clause in which the parties agreed to resolve their disputes in a private forum. The Court must honor that clause and compel arbitration of Prime's claims against Reign. In an attempt to reach beyond the four corners of the Agreement, Prime also sued the three Individual Defendants. With respect to those claims, the Court lacks personal jurisdiction over Martin Karo, and thus must dismiss the claim against him. The remaining Individual Defendants, Giorgio Johnson and Gary Mills, are the CEO and COO of Reign Financial, respectively. Because the counts against them are inextricably intertwined

1

and closely related to the alleged breach of contract—a claim which must be arbitrated—Plaintiff must arbitrate those claims, too.

If the Court does not compel arbitration, the Defendants also move to dismiss the claims against them under Rules 12(b)(6) and 9(b). In two of its four claims, Prime attempts to cast the parties' commercial dispute as a more ominous-sounding fraud. Those attempts fail as a matter of law because the parties' dispute is governed by their contract, and the fraud allegations fall far short of the pleading standards required by the Federal Rules. Prime's fraudulent concealment claim also fails on the additional basis that it does not allege that Reign owed it any legal duty. Finally, the Court should dismiss Prime's remaining two claims: (i) breach of contract, both because the Agreement specifically provides that Reign is not liable for the return of Prime's funds and because Prime does not plausibly allege a specific contractual provision that Reign violated; and (ii) conversion, because it is facially duplicative of the breach of contract claim.

## ARGUMENT

### I.     The Court Lacks Personal Jurisdiction Over Karo

As an initial matter, the Court should dismiss the sole count alleged against Mr. Karo (Count I) under Rule 12(b)(2) for lack of personal jurisdiction. The Amended Complaint makes only a few, cursory allegations against him, and it is completely devoid of any facts tying Mr. Karo to New York. Based on the threadbare allegations in the Amended Complaint, the Court can assert neither general nor specific personal jurisdiction over Mr. Karo.[1]

---

[1] The Court has the discretion to dismiss the claims against Mr. Karo based on a lack of personal jurisdiction before it addresses the Defendants' motion to compel arbitration. "[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 585 (1999)). "[T]here is no mandatory 'sequencing of jurisdictional issues,'" *id.* (quoting *Ruhrgas*, 526 U.S. at 584), and federal courts have addressed

A.      The Court Cannot Exercise General Personal Jurisdiction Over Karo

The Court can easily rule out asserting general personal jurisdiction over Mr. Karo because the Amended Complaint fails to allege that he is domiciled in New York, was served in New York, or has consented to the Court's jurisdiction.  *See Kidney v. Webster*, 2017 WL 758508, at *5 (N.D.N.Y. Feb. 27, 2017) (Kahn, J.) (setting forth general jurisdiction requirements).

B.      The Court Lacks Specific Personal Jurisdiction Over Karo

The Court also cannot exercise specific personal jurisdiction over Mr. Karo.  Indeed, the Amended Complaint's *sole* factual allegation against him is that he received funds from Reign— funds that Reign allegedly obtained via a loan that was collateralized by Prime's investment.  *See* ECF No. 4, ¶¶41, 44.  This is patently insufficient to establish that Mr. Karo purposefully availed himself of the New York forum.

"It is well established that in a diversity action" such as this one, "personal jurisdiction over a defendant is determined by the law of the state in which the federal court sits."  *Gilbert v. Wilson*, 821 F. Supp. 857, 859 (N.D.N.Y. 1993) (Scullin, J.).   New York's long-arm statute therefore governs here, and is applicable to a non-domiciliary (like Mr. Karo) who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

---

other threshold issues before reaching the question of whether arbitration should be compelled. *See Martinez v. Agoda Co. Pte. Ltd.*, 2023 WL 2254550, at *2 (S.D. Cal. Feb. 27, 2023) ("District courts must have personal jurisdiction over the parties before compelling them to arbitrate."); *Evans Energy Partners, LLC v. Seminole Tribe of Fla., Inc.*, 561 F. Supp. 3d 1171, 1175–76 (M.D. Fla. 2021) (addressing sovereign immunity before reaching arbitration issue), *aff'd*, 2022 WL 2784604 (11th Cir. July 15, 2022).

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he:

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  The analysis here is cabined to Sections 302(a)(1) and (a)(3)(ii).[2]

***Section 302(a)(1).***  "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoting N.Y. C.P.L.R. § 302(a)(1)).  Here, the sum total of the allegations against Mr. Karo in the Amended Complaint are: (i) Mr. Johnson reached out to Kris Roglieri, Prime's lone member, about Prime participating in a potential but ultimately unconsummated transaction in which Mr. Karo would serve as an escrow attorney, *see* ECF No. 4, ¶¶28-29; (ii) Mr. Roglieri informed Mr. Johnson, Mr. Mills, and Mr. Karo of purported issues with the transaction documents and Prime did not pursue that transaction, *see id.*, ¶31; and (iii) separately, Mr. Karo later received loan proceeds from Reign that were allegedly collateralized by Prime's funds, *see id.*, ¶¶41, 44.  These sparse allegations do not give license to hale Mr. Karo into this Court.

---

[2] The Amended Complaint makes no allegations that Mr. Karo has any property in New York, removing the possibility of jurisdiction under section 302(a)(4).  In fact, it does not allege he took *any* acts while physically inside New York state—removing the possibility of jurisdiction under section 302(a)(2). *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790 (2d Cir. 1999) (reaffirming that a "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)").  Section 302(a)(3)(i) is likewise not implicated because the Amended Complaint does not assert that Mr. Karo routinely does business in New York or "derives substantial revenue" from those activities.

*First*, with respect to the initial, unrealized transaction, there is no allegation that Mr. Karo *himself* ever affirmatively contacted Prime in New York or otherwise "transacted any business" there.    *Second*, Mr. Johnson—not Mr. Karo—e-mailed Prime about the unconsummated transaction, and Messrs. Johnson, Mills, and Karo were informed about the purported issues with the documents.  ECF No. 4, ¶28.  Putting aside the fact that Mr. Karo did not send the emails at issue, these limited email exchanges are insufficient to confer jurisdiction.  *See Lipson v. Birch*, 46 F. Supp. 3d 206, 218 (E.D.N.Y. 2014) (holding that email exchanges were "insufficient to support personal jurisdiction under Section 302(a)(1) against . . . non-resident defendants").[3]

*Third*, Mr. Karo's alleged receipt of funds from Reign also does not constitute "transact[ing] any business" in New York.  To start, the Amended Complaint "avers no facts that [Karo] played any role in the allegedly fraudulent scheme other than receiving the funds, nor does it allege that [Karo] even had awareness or knowledge of the effects of [Johnson] or [Mills'] activities in New York."  *Chapin Home for the Aging v. McKimm*, 2014 WL 12883697, at *5 (E.D.N.Y. Aug. 7, 2014) (court had no jurisdiction over recipient of allegedly misappropriated funds), *report and recommendation adopted*, 2014 WL 4662401 (E.D.N.Y. Sept. 18, 2014).  Nor does the Amended Complaint "allege that [Johnson] or [Mills] acted at the direction or request of [Karo] or that [Karo] otherwise controlled their conduct."  *Id.*  Thus, the result here should be no different than in *Chapin*, where the court found it lacked jurisdiction

---

[3] In any event, the unconsummated initial transaction, *see* ECF No. 4, ¶¶28-30, cannot support an exercise of specific jurisdiction over Mr. Karo because Prime's fraud allegations are based on Reign's alleged misappropriation of Prime's funds that it invested through Berone, *see id.* ¶¶62-64.  Prime's fraud claim does not "arise from" the initial contact because there is no "substantial nexus" between the transaction and Prime's fraud claim.  *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29, 31 (2d Cir. 1996).

over the non-resident recipients of allegedly fraudulently obtained funds, because "[t]he 'passive receipt of allegedly stolen funds, absent evidence of knowledge or intent, is an inadequate basis for the court's exercise of personal jurisdiction.'" *Id.* (quoting *Devinsky v. Kingford*, 2008 WL 857525, at *5 (S.D.N.Y. Mar. 31, 2008)).

Equally dispositive is the Amended Complaint's utter failure to plead any facts concerning the identity and location of the bank that transferred the funds to Mr. Karo or the identity and location of the bank at which he received them. *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010). In *Tamam*, the court granted a motion to dismiss for lack of personal jurisdiction where, as here, the complaint was missing allegations concerning "the actual transfer of money through New York," which "is the only factual predicate on which this Court could potentially base its jurisdiction." *Id.* Here, as there, the Amended Complaint offers no basis to, and the Court cannot, "make the speculative leap required" to connect Mr. Karo's receipt of funds to a New York bank account. *Id.*

***Section 302(a)(3)(ii)***. With respect to establishing specific personal jurisdiction "under N.Y. C.P.L.R. § 302(a)(3)(ii), five elements must be met: '(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce.'" *Palmer v. Cora Italian Specialties, Inc.*, 2022 WL 675707, at *5 (N.D.N.Y. Mar. 7, 2022) (Scullin, J.) (quoting *Jerusalem NY Enters. LLC v. Huber Erectors & Hoisting, LLC*, 2021 WL 4711821 *5, (E.D.N.Y. Oct. 9, 2021)). The facts pled in the Amended Complaint establish none of those elements. Critically, because the only allegation against Mr. Karo is his passive receipt of funds,

there simply is no "action" that he could have "expect[ed] or should reasonably [have] expect[ed] . . . would have consequences in [New York]."   N.Y. C.P.L.R. § 302(a)(3)(ii). Accordingly, the Court also cannot assert personal jurisdiction over Mr. Karo pursuant to N.Y. C.P.L.R. § 302(a)(3)(ii).[4]  For these reasons, the Court lacks personal jurisdiction over Mr. Karo and must dismiss Count I as to him.

## II.   Prime Must Submit Its Claims To Arbitration

Next, the Court should compel arbitration of this matter as to both Reign and the Individual Defendants.[5]  The Agreement contains an arbitration clause that by its terms covers this dispute, and the remaining Individual Defendants are entitled to enforce the arbitration clause against Prime, as well, because the claims against them arise directly out of the contractual relationship between Prime and Reign.

### A.   Legal Standard

In deciding a motion to compel arbitration, courts apply "a standard similar to that applicable for summary judgment."  *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). So, courts consider "all relevant admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits," and "draw all reasonable inferences in favor of the non-moving party."  *Nicosia v.*

---

[4] Here, any exercise of personal jurisdiction over Mr. Karo would likewise run afoul of the Fourteenth Amendment's Due Process Clause.  Indeed, "the personal jurisdiction analysis under § 302(a)(1) and the Due Process Clause is in most instances essentially coterminous," *HSH Nordbank AG New York Branch v. Street*, 2012 WL 2921875, at *4 n.3 (S.D.N.Y. July 18, 2012), because "New York decisions . . . at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes 'purposeful availment,'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010) (citation omitted).

[5] In the event that the Court does not dismiss the fraud claim against Mr. Karo because it lacks personal jurisdiction, it should compel arbitration of the claim against him as well.

*Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).  That said, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010).  And that makes sense, because "[t]he Federal Arbitration Act ('the FAA'), 9 U.S.C. § 1 *et seq.*, embodies a strong federal policy favoring the enforcement of arbitration agreements."[6]  *Webb v. Wellins*, 1999 WL 31113, at *2 (N.D.N.Y. Jan. 21, 1999) (Scullin, J.).  Thus, "a presumption of arbitrability exists, which may be overcome only upon a positive finding that the agreement cannot be interpreted to cover the issue in dispute."  *Id.*  As this Court has noted, "unless the making of the agreement to arbitrate or the failure, neglect, or refusal of one party to arbitrate is in dispute, the court must compel arbitration."  *Fort Miller Co. v. Am. Transp., Inc.*, 2013 WL 773108, at *5 (N.D.N.Y. Feb. 28, 2013) (quoting *Application of Conticommodity Servs. Inc.*, 613 F.2d 1222, 1225 (2d Cir. 1980)).

"The Second Circuit has provided district courts with a four-pronged analysis to follow in determining whether a dispute is governed by an arbitration clause[.]"  *Hong Wang v. Precision Extrusion, Inc.*, 2018 WL 3130589, at *3 (N.D.N.Y. June 26, 2018) (Scullin, J.) (quoting *Senisi v. John Wiley & Sons, Inc.*, 2015 WL 256094, at *2 (S.D.N.Y. Jan. 21, 2015)).  Courts must determine: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) "if federal statutory claims are asserted, . . . whether Congress intended those claims to be nonarbitrable"; and (4) "if . . . some, but not all, of the claims in the case are arbitrable, . . .

---

[6] As the Supreme Court recently recognized, "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules."  *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).  Here, however, the Court need only interpret the applicability of a standard arbitration clause, not create any novel procedural rules.  Nor does *Morgan* "signal a retreat from the policy of the FAA favoring arbitration."  *Deng v. Frequency Elecs., Inc.*, 2022 WL 16923999, at *3 n.2 (E.D.N.Y. Nov. 14, 2022).

whether to stay the balance of the proceedings pending arbitration." *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). And in assessing these factors, "any doubt regarding the scope of the agreement is to be resolved in favor of arbitration," keeping in mind that "an arbitration agreement is construed 'as broadly as possible.'" *Webb*, 1999 WL 31113, at *2 (quoting *Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998)). Applied here, these standards require Prime to honor its commitment to arbitrate its claims.

      B.     <u>Prime's Claims Against Reign Financial Are Subject To The Agreement's Arbitration Clause</u>

Under the broad terms of the Agreement's arbitration clause, Prime must arbitrate its claims against Reign Financial. The arbitration clause reads:

ARTICLE 7.        ARBITRATION

7.1    In all cases, the contracting Parties herein shall settle any such dispute as may arise locally, upon mutual agreement, unless arbitration becomes necessary. By their execution of this Agreement, the Parties hereto submit themselves to the jurisdiction of [*sic*] United State[s] of America, in the District of Columbia, Washington, D.C.

7.2    Every attempt shall be made to resolve disputes arising from intended or inadvertent violation of this Agreement, as possible. In the event that adjudication is required, local process shall be proceeded with, according to the principles of the International Chamber of Commerce rules & regulations as amended, (hereinafter referred to as the "I.C.C."). Where judicial resolution is not thereby achieved, this matter is to be settled by which is recognized as the Agency having authority over matters of I.C.C. itself, the decision of which all Parties shall consider to be final and all proceeding[s] shall take place in the District of Columbia, Washington D.C., subject to the above options. A judgment upon award may be entered and enforced in any court of competent jurisdiction.

ECF No. 4-1, ¶7.

To start, the Court should look to the title of the section, which is "ARBITRATION." *See id.*; *cf. Yates v. United States*, 574 U.S. 528, 540 (2015) (noting that "[w]hile . . . headings are not commanding, they supply clues" to statutory meaning). Moreover, Section 7.1 expressly

contemplates that the parties will arbitrate their claims. *Id.* ("[T]he contracting Parties herein shall settle any such dispute as may arise . . . unless arbitration becomes necessary."). The Agreement further states that if "adjudication is required, local process shall be proceeded with, according to the principles of the International Chamber of Commerce rules & regulations . . . ." *Id.* The International Chamber of Commerce is one of the world's foremost arbitral bodies, having arbitrated more than 27,000 disputes over the past one hundred years.[7] The arbitration clause also notes that a judgment upon the award "may be entered and enforced in any court of competent jurisdiction"—in other words, the typical process for enforcing arbitral awards. *See id.* This language points to a singular conclusion: the parties intended to arbitrate any claims "arising from" alleged violations of the Agreement.

And Prime's claims are "disputes arising from" alleged "violation[s]" of the Agreement. ECF No. 4-1 at 5. The core of Prime's allegations is that Reign Financial failed to invest Prime's money as required by the Agreement, used Prime's funds to obtain a loan in contravention of the Agreement, misled Prime about the status of those funds, and never returned the funds. All of these claims—for fraud, breach of contract, and conversion—"arise" from the Agreement because, but-for the Agreement, the investment funds at the heart of the Amended Complaint would never have been transferred to Reign. *See, e.g.*, *Dill v. JPMorgan Chase Bank, N.A.*, 2020 WL 4345755, at *7 (S.D.N.Y. July 29, 2020) (finding that claims fell within scope of arbitration provision because "[t]his case never arises but for" the parties' agreement, which contained the arbitration clause); *Brown v. City of Philadelphia*, 2010 WL 4484630, at *7 (E.D. Pa. Nov. 9, 2010) (similar). As other courts have noted, "[t]he use of phrases such as 'alleging a violation of

---

[7]   *See*    https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/;    and https://iccwbo.org/dispute-resolution/dispute-resolution-services/icc-international-court-of-arbitration/centenary-of-the-icc-court/.

this Agreement' in an arbitration provision generally indicates an intent to arbitrate a broad scope of claims." *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, 2020 WL 620294, at *3 (C.D. Cal. Jan. 9, 2020).  Accordingly, Prime's claims against Reign must be arbitrated.

C.    Prime's Claims Against The Individual Defendants Are Subject To The Agreement's Arbitration Clause

Prime must also arbitrate its claims against the Individual Defendants.  As explained, the Agreement's arbitration clause must be construed broadly to comport with Congress' "liberal federal policy favoring arbitration agreements." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985).  Consistent with that approach, it is *not* the case that "an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (quoting *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960)).  Instead, the Second Circuit has long held "that a nonsignatory party may be bound to an arbitration agreement if so dictated by the 'ordinary principles of contract and agency.'" *Thomson-CSF*, 64 F.3d at 776 (quoting *McAllister Bros., Inc. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980)).

As recently as 2020, the Supreme Court recognized that one such common law principle—equitable estoppel—may be used by non-signatories of contracts containing arbitration provisions to enforce those provisions as to claims against them.  *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643–44 (2020) (noting that "Chapter 1 of the FAA permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement").  The Second Circuit has repeatedly held the same.  *See, e.g.*, *Doe v. Trump Corp.*, 6 F.4th 400, 412 (2d Cir. 2021) ("[W]e have recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel." (quoting *Ross v.*

11

*Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007))).  So have courts in this District.  *See, e.g.*, *Keyes v. Ayco Co., L.P.*, 2018 WL 6674292, at *4 (N.D.N.Y. Dec. 19, 2018) (Sannes, J.).

Courts apply a two-step analysis to determine whether a non-signatory may enforce an arbitration provision by equitable estoppel.  The first inquiry is whether "the signatory's claims arise under the subject matter of the underlying agreement" (the "entwinement prong"); the second is "whether there was a close relationship between the signatory and the defendant non-signatory" (the "close relationship prong").  *King v. AptDeco, Inc.*, 2022 WL 4448679, at *6 n.3 (S.D.N.Y. Sept. 22, 2022).  Here, both the entwinement and close relationship prongs are met as to the Individual Defendants, and so the Agreement's arbitration clause requires Plaintiff to arbitrate its claims against these Defendants, as well.

#### i.  *The Claims Against Defendants Johnson And Mills Must Be Arbitrated*

The entwinement and close relationship prongs are easily satisfied as to Messrs. Johnson and Mills.  The entwinement prong is satisfied because "the subject matter of the dispute" between Prime and Reign "is factually intertwined with" Prime's claims against Messrs. Johnson and Mills.  *Keyes*, 2018 WL 6674292, at *5 (quoting *Ragone*, 595 F.3d at 128)).  Prime's fraud and fraudulent concealment claims against Messrs. Johnson and Mills plainly arise from the same subject matter as the Agreement, which contains the arbitration clause:  the "subject matter" of the Agreement is the investment of Prime's funds, and Prime's fraud claims against Messrs. Johnson and Mills involve the alleged misappropriation of those funds (and alleged concealment of the same).  The two are inextricably linked—but-for the Agreement, there would have been no funds to (allegedly) misappropriate.  Stated another way, Prime's claims against Messrs. Johnson and Mills "are sufficiently intertwined with the [Agreement] that include[s] the relevant arbitration agreement[]" because the Agreement is "the sole reason that [Prime] [has]

any relationship with [Johnson and Mills]." *Government Employees Ins. Co. v. Grand Medical Supply, Inc.*, 2012 WL 2577577, at *4 (E.D.N.Y. July 4, 2012). In *Grand Medical*, the court permitted the non-signatory defendant to compel arbitration where, as here, the funds plaintiffs sought to recover were paid pursuant to the underlying contract containing the arbitration provision. *See id.* So, too, here, where it is due only to the Agreement—which contains the arbitration provision—that Prime "paid the funds that [it is] now seeking to recover from" Messrs. Johnson and Mills. *Id.* Thus, "there can be no dispute that [Prime's] claims" against Messrs. Johnson and Mills "are intertwined with the agreements to which [Prime is] a party." *Id.*

In fact, Prime concedes entwinement when it expressly relies on the Agreement in setting forth its fraud claims against Messrs. Johnson and Mills, which courts in this Circuit have described as the "*sine qua non* of an appropriate situation for applying equitable estoppel." *See* ECF No. 4, ¶64 (alleging that Prime's reliance on representations made by Defendants was justified by "the mutual promises and obligations made in the parties Trade Agreement"); *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F. Supp. 2d 295, 301 (S.D.N.Y. 2008). Moreover, Prime brings the same allegations of fraud and fraudulent concealment against Reign Financial (the signatory) and Messrs. Johnson and Mills (the non-signatories). *See* ECF No. 4, ¶¶61–73. Given these *identical claims* against both signatory and non-signatory parties for the *same alleged conduct*, Prime cannot "deny the connectedness of the claims asserted against [the non-signatories] and those against [the signatory]." *Carroll v. Leboeuf, Lamb, Greene & MacRae, LLP*, 374 F. Supp. 2d 375, 377 (S.D.N.Y. 2005). The *Carroll* court found that non-signatory defendants could compel investors to arbitrate claims against them where, as here, the plaintiffs' claims against the non-signatories were nearly "identical to claims against [the signatory]."

Further, Messrs. Johnson and Mills are, respectively, Reign's CEO and COO, satisfying the close relationship prong.  Courts in this Circuit have consistently held that non-signatory defendants holding high-ranking positions at signatory parties have the requisite "close relationship" to invoke the estoppel doctrine.  *See, e.g.*, *King*, 2022 WL 4448679, at *6 n.3 (finding the close relationship prong satisfied where non-signatory defendants were the CEO and co-founder of the signatory party); *Greene v. Kabbalah Ctr. Int'l, Inc.*, 2022 WL 4006903, at *11 (E.D.N.Y. Sept. 1, 2022) (finding the close relationship prong satisfied where one non-signatory defendant was the CEO of the signatory party and the other non-signatory defendants were "intimately involved in [the signatory party's] operations and decision-making").  Thus, the entwinement and close relationship prongs are met as to both Messrs. Johnson and Mills.

### ii.   The Claim Against Karo Must Be Arbitrated

In the event the Court does not dismiss the claim against Mr. Karo for lack of personal jurisdiction, it should nevertheless compel arbitration of the sole claim against him.  As with the allegations against Messrs. Johnson and Mills, the fraud claim against Mr. Karo is inextricably intertwined with the Agreement between Prime and Reign.  The Amended Complaint's references to Mr. Karo are so sparse it is difficult to ascertain the allegations against him, but they are at the very least derivative of the allegations against Reign and Messrs. Johnson and Mills:  Mr. Karo allegedly received the loan proceeds that Prime asserts the other Defendants fraudulently obtained.  Further, the Amended Complaint alleges that Mr. Karo was working closely with Reign and the other Defendants, referring to the "Defendants" as a single group on numerous occasions and noting that Prime was in direct contact with "Johnson, Mills and Karo." *See, e.g.*, ECF No. 4, ¶¶12–14, 31, 38, 59.  Thus, the "close relationship" prong is also met as to Mr. Karo, who is alleged to have collaborated with the other Defendants when he received the

14

loan proceeds.  *See Ross v. Am. Exp. Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (noting that the Second Circuit "has applied estoppel in cases involving subsidiaries, affiliates, agents, and other related business entities").

Consistent with the law of this Circuit and the plain language of the Agreement, the Court must compel arbitration of Prime's claims and stay these proceedings pending arbitration.  *See Katz v. Cello P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (finding that FAA requires a stay when (i) all claims must be arbitrated and (ii) a stay is requested).

**III.    In The Alternative, The Court Should Dismiss The Amended Complaint**

In the event that the Court does not compel arbitration of Prime's claims, the Court should dismiss all four counts of the Amended Complaint.

A.    <u>The Court Should Dismiss The Fraud And Fraudulent Concealment Claims</u>

The fraud and fraudulent concealment claims (Counts I and II) fail because, fundamentally, this is a commercial dispute that must be governed by the parties' Agreement.

*i.    The Fraud Claims Are Inadequately Detailed and Duplicative*

***The Fraud Claim Is Not Independent Of The Breach Of Contract Claim***.  Distilled to its essence, this is a contractual dispute between two sophisticated commercial entities: the Amended Complaint alleges that Prime invested $20 million under the terms of the Agreement (and the related Joint Venture Agreement and Escrow Agreement), that Reign breached the Agreement in two main respects, and that Reign should pay its money back.  *See generally* ECF No. 4.  As Prime alleges in the Amended Complaint, these documents "were the subject of extensive telephone and email negotiations" between the parties.  *Id.*, ¶21.  Prime, angling for an additional basis of recovery, seeks to expand the dispute beyond the four corners of the Agreement by alleging blatantly duplicative fraud claims against the Individual Defendants.  The

law forecloses Prime's attempt to plead around the parties' contract, and the fraud claim (Count I) must therefore be dismissed.

Under New York law, "[w]hen a plaintiff's fraud claim 'arises out of the same facts as [the] breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties,' the fraud claim is duplicative and cannot stand." *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 234 (S.D.N.Y. 2012). Yet that is precisely what Prime attempts to do here. The main allegedly false representation on which the fraud claim is based is that Reign would help Prime invest its funds into the arbitrage "Program." ECF No. 4, ¶62. But this is merely what was required by the Agreement. *See* ECF No. 4.1, ¶1.1 ("The purpose of this Agreement is to invest funds in the hedge fund . . . so that the hedge fund can provide [Reign] the ability to . . . take [Prime] into the Program(s)."). "[S]imply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder," as Prime has done here, "is insufficient to state an independent tort claim." *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001).

Prime also alleges that, following execution of the Agreement, Mr. Mills "assured" Prime that Reign "was actively working on bringing Prime's Investment Funds into the Program."[8] ECF No. 4, ¶44. This species of statement "made in the context of merely assuring [Prime] that [Reign] would comply with its contractual obligation" is insufficient to make out a fraud claim.

---

[8] Prime also alleges that Mr. Mills made pre-Agreement representations regarding Reign's ability to bring Prime into the Program, *see* ECF No. 4, ¶¶15-17, but these representations were superseded by the Agreement's merger and non-reliance clauses and are therefore not actionable, *see* ECF No. 4-1, ¶9.1; *Xerox Corp. v. JCTB Inc.*, 2018 WL 5776423, at *9 (W.D.N.Y. Nov. 2, 2018) (finding that, in light of merger clause, a party "plausibly cannot assert that they reasonably relied on . . . any pre-contractual statements") , *aff'd*, 787 F. App'x 43 (2d Cir. 2019).

*Linea Nuova, S.A. v. Slowchowsky*, 62 A.D.3d 473 (App. Div. 1st Dep't 2009) (affirming holding that fraud claim duplicated breach of contract claim); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) ("[I]ntentionally-false statements . . . indicating [an] intent to perform under the contract" cannot "support a claim of fraud under New York law.").

> ***The Fraud Claim Is Inadequately Detailed***. Moreover, Prime's allegations of fraud are hopelessly speculative and conclusory. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requires a party to specifically assert the circumstances constituting the fraud, including "(1) specify[ing] the statements that the plaintiff contends were fraudulent, (2) identify[ing] the speaker, (3) stat[ing] where and when the statements were made, and (4) explain[ing] why the statements were fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994). "Although 'malice, intent, knowledge and other condition of mind of a person may be averred generally,' Fed R. Civ. P. 9(b), this leeway is not a 'license to base claims of fraud on speculation and conclusory allegations.'" *Eternity Global Master Fund Ltd. v Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

> Here, Prime's allegations of fraudulent intent are entirely conclusory and lack the requisite detail mandated by Rule 9(b). Fatally, the Amended Complaint alleges that "[u]pon information and belief, there never was a Program and/or Reign never intended to take Prime into the Program." ECF No. 4, ¶38. Prime alleges no facts or evidence to support this serious allegation, which is why it pleads it upon information and belief. This is wholly insufficient to satisfy the rigors of Rule 9. *See U.S. ex rel. Branigan v. Bassett Healthcare Network*, 234 F.R.D.

41, 44 (N.D.N.Y. 2005) (Mordue, J.) ("As a general rule . . . Rule 9(b) pleadings cannot be based upon information and belief."); *see also In Re Renewable Energy Grp. Sec. Litig.*, 2022 WL 14206678, at *5 n.5 (2d Cir. Oct. 25, 2022) ("[U]nder the heightened pleading standard of Rule 9(b), 'pleadings cannot be based on information and belief. . . . [T]he allegations must then be accompanied by a statement of the facts upon which the belief is founded.'" (quoting *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972))).

Likewise, the Amended Complaint offers no factual support for its similar allegation that the Defendants were aware "that there was no Program and/or that Reign had no intention to bring Prime into the Program," and instead intended "to utilize Prime's Investment Funds to obtain the Fraudulent Loan Proceeds." ECF No. 4, ¶63.  Prime cannot sustain its burden to plead fraud with specificity by making wholly conclusory and speculative allegations as to the Defendants' scienter.  *See O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991) ("[W]hile Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990))).

***There Are Virtually No Allegations Of Fraud Against Karo***.  The Court should dismiss the fraud claim against Mr. Karo for the additional reason that the Amended Complaint barely makes any allegations against him.  *See generally* ECF No. 4.  As explained, claims based in fraud are subject to the heightened pleading requirements of Rule 9(b), which is a "rigorous" standard.  *Hall v. Tressic*, 381 F. Supp. 2d 101, 109 (N.D.N.Y. 2005) (Hurd, J.) (quoting *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 321 (E.D.N.Y. 2001)).  Where, as here, "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne*

*Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).   Thus, fraud claims must be dismissed where "there is no allegation linking [a defendant] in any specific way to any fraudulent misrepresentation or omission."   *Id*. at 1249; *see also Regnante v. Sec & Exch. Officials*, 134 F. Supp. 3d 749, 771 (S.D.N.Y. 2015) (granting motion to dismiss for failing to particularize each defendant's misconduct; "Rule 9(b) requires that 'when fraud is alleged against multiple defendants, a plaintiff must set forth separately the acts complained of by each defendant'" (quoting *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 641 (S.D.N.Y. 2007))). The Amended Complaint fails to satisfy this basic standard of fraud pleading as to Mr. Karo.

As discussed above with respect to personal jurisdiction, the sum total of the factual allegations with respect to Mr. Karo are that he received money—not from Plaintiff, but from Reign.   *See* ECF No. 4, ¶¶41, 44.   That claim, standing alone, does not adequately allege fraud where, as here, there are no allegations that Mr. Karo himself made any actionable omissions or misrepresentations.   *See Gemmon LLC v. Becker*, 148 A.D.3d 579, 579 (App. Div. 1st Dep't 2017) (upholding dismissal of fraud claim against one defendant because "the amended complaint failed to plead any misrepresentations made by her to plaintiff, since plaintiff dealt with others and there were no allegations that she authorized the alleged misrepresentations by others with knowledge of their falsity").   Plaintiff also cites no facts that Mr. Karo knew that the funds at issue were loan proceeds collateralized by Prime's funds, or even that they were borrowed.   Beyond the receipt of funds, there are simply no other factual allegations against Mr. Karo in the Amended Complaint.   To be sure, Prime invokes the "Defendants" as a bloc in an attempt to make out its claims, *see id.*, ¶¶12-14, 38, 59, but this is nothing more than the prohibited practice of "lump[ing] the defendants together 'without any specification as to the precise' fraudulent conduct attributed to each."   *Excel Realty Advisors, L.P. v. SCP Capital, Inc.*,

19

2010 WL 5172417, at *6 (N.Y. Sup. Ct. Dec. 02, 2010) (quoting *Aetna Cas. & Sur. Co. v. Merchants Mut. Ins. Co.*, 84 A.D.2d 736, 736 (App. Div. 1st Dep't 1981))).

The Amended Complaint likewise accuses Mr. Karo of "aiding and abetting" the scheme and that he "acted in concert" with the other Defendants, *see id.*, ¶¶65, 67, but fails to identify a *single* specific act or incident.  This conclusory style of pleading fails Rule 9(b).  Take *Stair v. Calhoun*, 2009 WL 792189 (E.D.N.Y. Mar. 23, 2009), for example.  There, the court held that fraud allegations based on "conclusory allegations that [certain defendants] acted in concert with other defendants" were "insufficient to sustain a claim of fraud."  *Id.* at *14.  The claim that Mr. Karo worked "in concert" with the other Defendants is similarly unsupported.  Likewise, the court in *Gilman Bros. Inc. v. Peat, Marwick, Mitchell & Co.*, 1978 WL 1103 (S.D.N.Y. May 15, 1978) dismissed fraud claims where, as here, "[p]laintiff attempts to supply the requisite particularity" for a fraud claim with a "wholly conclusory allegation" that the defendant "aided, abetted and conspired with its codefendants to perpetrate the frauds charged against [the plaintiffs."  *Id.* at *2.  This method of pleading failed in *Gilman Bros.* and it should fail here, too.  Finally, Mr. Karo's inaction—his passive receipt of funds—does not, as a matter of law, constitute "aiding and abetting."  *In re Platinum-Beechwood Litig.*, 400 F. Supp. 3d 2, 5 (S.D.N.Y. 2019).  The fraud claim against Mr. Karo must be dismissed.

     *ii.*     *The Fraudulent Concealment Claim Fails To Allege A Duty*

Prime's fraudulent concealment claim (Count II) necessarily fails because, as explained, it fails to adequately allege fraud.  *See HSH Nordbank AG v. Barclays Bank PLC*, 986 N.Y.S.2d 866 (N.Y. Sup. 2014) ("A cause of action for fraudulent concealment requires proof of . . . fraud based on a misrepresentation.").  Thus, "[b]ecause there was no fraud claim, the fraudulent

concealment claim necessarily also fails; [the defendant] cannot have concealed what did not happen." *Aiken v. Rimkus Consulting Grp. Inc.*, 333 F. App'x 806, 812 (5th Cir. 2009).

Additionally, the Court should dismiss Plaintiff's fraudulent concealment claim for the independently dispositive reason that the Amended Complaint fails to allege that Defendants owed Prime a duty to disclose material information.  On top of the traditional elements of fraud, a plaintiff pleading fraudulent concealment must also "alleg[e] that the defendant had a duty to disclose material information and that it failed to do so." *P. T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376 (App. Div. 1st Dep't 2003).  As the Amended Complaint does not allege such a duty, it must be dismissed. *See, e.g.*, *Confido Advisors, LLC v. USAA Real Est. Co.*, 2019 WL 4747705, at *4 (S.D.N.Y. Sept. 30, 2019) (dismissing fraudulent concealment claim where the operative complaint "fails to adequately ple[a]d the 'duty to speak' element"); *Lefkowitz v. Bank of New York*, 676 F. Supp. 2d 229, 266–69 (S.D.N.Y. 2009) (dismissing fraudulent concealment claim where the plaintiff did not allege that the defendant "had a duty to inform her" of certain information).

> B.     The Court Should Dismiss The Breach Of Contract Claim

Prime alleges that Reign breached the Agreement in two ways:  First, that Reign failed to return its investment funds upon request, and second, that Reign comingled Prime's funds with Reign's own funds and those of other investors to participate in an unauthorized transaction.  *See* ECF No. 4, ¶¶77-78.  Both theories are fatally flawed and the Court should therefore dismiss the breach of contract claim (Count III).  As to each basis, Prime agreed to specific language in the Agreement that expressly limits Reign's liability for the return of Prime's funds.  And as to the second theory specifically, Prime relies on a contractual provision that by its plain terms was not breached by Reign's alleged conduct.

i.      *Prime Agreed To Limit Reign's Liability For The Return Of Funds*

In the Agreement, Prime agreed that Reign would "not be liable to [Prime] for return of Cash Funds."  ECF No. 4-1, ¶9.2.  The term "Cash Funds" clearly refers to Prime's $20 million investment because, in another provision of the Agreement, the term "cash funds" is used in connection with it: "[Prime] wishes to participate in a financial private commercial transaction … and has made available cash funds in the amount of [$20 million] . . . ."  ECF No. 4-1 at 2.  In alleging its breach of contract claim, Prime unsurprisingly does not address this provision and instead bases that count mainly on Reign's alleged breach of the following provision:

> If the trade program that RFI enters does not perform, immediate steps will be taken by RFI to unwind the BNP account and have the hedge fund release the funds in the account of PCV back to their designated account at any banking institution they should designate.  This process of unwinding everything may take up to 5-7 banking days from the demand of PCV to receive their funds back due to non-performance of the trade program that RFI entered in to.

ECF No. 4, ¶¶27, 75-77; ECF No. 4-1, ¶1.5.  As explained, Prime also alleges that Reign used Prime's funds to participate in an investment that was not authorized by the Agreement, *see* ECF No. 4, ¶78, but neither that nor any other contractual provision Prime cites contradicts the provision limiting Reign's liability or even addresses Reign's liability in the event of an alleged breach.  Simply put, Prime agreed that Reign would not be liable for the return of its funds.  This makes sense because, as stated in another provision of the Agreement pertaining to liquidated damages, this was a "best-efforts" transaction.  ECF No. 4-1, ¶9.10.  Prime also preserved its rights to recover its funds from the hedge fund (Berone) involved in the alleged transaction  and certain banks in another provision (titled "Waiver of Rights Against Certain Parties"): "PCV has not waived any rights, against any party, with respect to obtaining the return of their initial investment capital."  ECF No. 4-1, ¶11.1.

22

In New York, contracting parties may—as Reign did here—wholly exonerate themselves from most claims of liability and may limit the damages owed for breach.  *See, e.g.*, *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 553 (1992) ("Absent a statute or public policy to the contrary, a contractual provision absolving a party from its own negligence will be enforced."); *Peluso v. Tauscher Cronacher Pro. Engineers, P.C.*, 270 A.D.2d 325, 325 (App. Div. 2nd Dep't 2000) (explaining that contract damages limits are "enforceable unless the special relationship between the parties, a statute, or public policy imposes liability.").  Such exculpatory provisions are not without limits: in breach of contract cases, "grossly negligent conduct" renders exculpatory clauses unenforceable.  *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 353 (2020).

Here, Prime has failed to plead any basis that would allow it to avoid an otherwise straightforward application of the Agreement's bar on Reign's liability for the return of the "Cash Funds."  Critically, New York courts have held that claims of breach of contract "[do] not evince the necessary reckless indifference to the rights of others that would render [a] limitation of liability clause unenforceable."  *Soja v. Keystone Trozze, LLC*, 106 A.D.3d 1168, 1170 (App. Div. 3rd Dep't 2013).  Accordingly, the Court should hold Prime to its bargain, apply the terms of the Agreement, and find that Reign is not liable to Prime for the return of its investment.

ii.   *Prime Fails To Plausibly Allege A Contractual Provision Reign Breached*

*Second*, the Court should also dismiss the breach of contract count insofar as it relies on Paragraph 1.4 of the Agreement because that provision is inapplicable to the alleged conduct.  The Amended Complaint claims that, "[p]ursuant to Paragraph 1.4 of the Trade Agreement, Reign was not authorized to use Prime's Investment Funds for any purpose other than to participate in the Program."  ECF No. 4, ¶42.  Paragraph 1.4 of the Agreement, however, only references the creation of an account for Prime and does not address in any way the scope of

23

Reign's authorization to use Prime's funds.  ECF No. 4-1, ¶1.4.  Similarly, when Prime repeats this allegation later in the Amended Complaint, it conspicuously omits any reference to a specific provision of the Agreement Reign allegedly breached.  *See* ECF No. 4, ¶78.

This failure to plausibly set forth a particular contractual provision Reign allegedly breached is fatal to Prime's breach of contract claim.  That is because "New York law and the *Twombly–Iqbal* standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached.  Otherwise, the complaint must be dismissed."  *Spinelli v. N.F.L.*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015).  Prime does not plausibly allege a specific contractual provision for its second basis for breach of contract liability, and so the Court should dismiss Count III on that basis.  *See, e.g.*, *Doe v. Syracuse Univ.*, 2022 WL 798058, at *7 (N.D.N.Y. Mar. 16, 2022) (Sannes, J.) (looking to the "plain language" of the contract to find that plaintiff failed to allege a "contractual promise that could be the basis of a viable breach of contract claim").  Just as Judge Sannes did in *Doe*, the Court here should look to the plain text of the Agreement, which shows that Paragraph 1.4 is not transgressed by any of Reign's alleged conduct—rendering Prime's breach claim implausible.

C.     The Court Should Dismiss The Conversion Claim As Duplicative Of The Breach Of Contract Claim

Finally, Prime's conversion claim (Count IV) must be dismissed as repetitive of the breach of contract claim.  Under New York law, a conversion claim cannot stand "where damages are merely sought for a breach of contract."  *Clark v. Brownell*, 110 N.Y.S.3d 504, *5 (N.Y. City Ct. 2018).  Instead, and to avoid an impermissible double-recovery, "[a] conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations."  *Assembly Point Aviation, Inc. v. Richmor Aviation, Inc.*, 2013 WL 12174045, at *12 (N.D.N.Y. Sept. 3, 2013) (Scullin, J.) (quoting *Command Cinema Corp. v. VCA Labs, Inc.*,

464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006)). "In determining whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." *Id.* (quoting *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 164 (E.D.N.Y. 2012)).

Here, Prime's conversion claim is patently duplicative of its claim for breach of the Agreement. As with its breach of contract claim, Prime asserts conversion only against Reign and relies on the Agreement itself to allege Prime's superior right of possession in the investment funds and that Reign did not have a legal right to them. ECF No. 4, ¶¶83-89. Indeed, Prime makes no effort to distinguish its breach of contract allegations from those for conversion, relying on the very same acts to plead both claims. *Compare id.*, ¶78 (breach of contract) ("Reign has beached the Trade Agreement by comingling Prime's Investment Funds with its own funds and or the funds of other investors[.]"), *with id.*, ¶¶85-89 (conversion) (alleging that Reign "interfered with Prime's right of possession in the funds" by "co-mingl[ing] Prime's Investment Funds with its own funds or the funds of its other clients[.]"). Where, as here, a party "relies on the same set of facts to establish both the breach of contract and the conversion claims," the conversion claim must be dismissed. *Medequa LLC v. O'Neill & Partners LLC*, 2022 WL 3227814, at *6 (S.D.N.Y. Aug. 10, 2022) (dismissing conversion claim in similar circumstances). This Court did so in *Assembly Point Aviation*, 2013 WL 12174045, at *12–13, and the result should be no different here. Accordingly, the Court must dismiss Count IV.

## **CONCLUSION**

For the reasons stated above, the Court should dismiss the sole count against Martin Karo and compel arbitration of the remaining claims against Reign, Giorgio Johnson, and Gary Mills. In the alternative, the Court should dismiss each of the four counts of the Amended Complaint.

Respectfully Submitted,

Date: June 12, 2023                    By: */s/ Adam R. Shaw*

Adam R. Shaw
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel:  (518) 434-0600
ashaw@bsfllp.com

Blake Goebel (admitted *pro hac vice*)
Cameron C. Miller (*pro hac vice* forthcoming)
1401 New York Ave. NW
Washington, D.C. 20005
Tel:  (202) 895-5248
bgoebel@bsfllp.com
cmiller@bsfllp.com