Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PRIME CAPITAL VENTURES, LLC,

                      Plaintiff,

           -against-

REIGN FINANCIAL INTERNATIONAL, INC.,
GIORGIO JOHNSON, GARY MILLS, and
MARTIN KARO,

                 Defendants.
_____

**SECOND~~FIRST~~AMENDED
COMPLAINT**

Civil Case No.:1:23-cv-00207
(FJS/DJS)

~~Date Filed: March 9, 2023~~

Plaintiff, Prime Capital Ventures, LLC ("Prime"), by and through its attorneys, Girvin &

Ferlazzo, P.C., as and for its ~~First~~ Second Amended Complaint, filed ~~as of right~~with leave of Court

pursuant to FRCP 15(a)(2~~1~~)~~(a)~~, against Defendant Reign Financial International, Inc. ("Reign"),

Giorgio Johnson ("Johnson"), Gary Mills ("Mills") and Martin Karo ("Karo") (Reign, Johnson,

Mills and Karo are collectively referred to herein as "Defendants") states and alleges as follows:

## PARTIES

1.     Prime is a limited liability corporation duly organized and existing under the laws

of the State of Delaware with its principal place of business in Albany County, New York.

2.     Prime is a citizen of the State of New York because Prime's sole member, Kris

Roglieri, is a resident of the State of New York.

3.     Reign is a foreign business corporation organized and existing under the laws of

the State of Delaware with its principal place of business at 8 The Green, Suite R, Dover, Delaware.

4.     Reign is a citizen of Delaware because Delaware is both the state of its

incorporation and the location of its principal place of business.

5.      At all times relevant to this action, Reign has conducted business in the State of New York and within the boundaries of the Northern District of New York.

6.      Johnson is a citizen of the state of Oregon.

7.      Mills is a citizen of the state of Florida.

8.      Karo is a citizen of the state of Pennsylvania.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) insofar as the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and no Defendant is a citizen of the same state as the Plaintiff.

10.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## NATURE OF THE ACTION

11.      The instant action seeks the recovery of $20,000,000.00 (the "Investment Funds") based upon ~~breach of contract and due and~~ a conspiracy to defraud Prime orchestrated by Reign's Chief Executive Officer~~,~~ Johnson, Reign's Chief Operating Officer~~,~~ Mills, and Karo.

12.      Defendants Mills, Johnson, and Reign – all secretly acting at the behest of and for the benefit of Karo – induced Prime to deposit the Investment Funds with non-party hedge fund Berone Capital Fund, L.P. ("Berone"), under the pretense that such funds would be used by Reign to participate in a transaction platform involving arbitrage of international commercial private placement programs (the "Program").

13.      Under this pretense, and based on additional representations by Defendants, Prime entered into a "Trade Agreement for Prime Capital Ventures, LLC No. PCV-RFI-20M-092022", dated October 3, 2022 (the "Trade Agreement") and transferred the Investment Funds to Berone. A copy of the Trade Agreement is attached hereto as Exhibit A.

2

14.     Instead of taking Prime into the Program as agreed, Defendants converted the Investment Funds by collateralizing those funds in a transaction wholly unrelated to the Program – and without Prime's knowledge or consent – whereby Reign, acting through and/or at the direction of Johnson and/or Mills, took out a line of credit against Prime's account at Barone and enabled Karo to absconded with more than $12,000,000 dollars in loan proceeds from that loan (the "Fraudulent Loan Proceeds"), giving rise to the instant claims for fraud, fraudulent concealment, breach of contract and conversion, promissory estoppel, and unjust enrichment.

## **FACTS**

15.     Beginning in September of 2022, through emails and telephone calls to Prime's sole member, Kris Roglieri ("Roglieri") at Prime's Albany, New York office, Mills began soliciting Prime's participation in the Program.

16.     According to Mills, Reign had extensive professional experience with complex, large-scale international financial investments and had a, through its pre-existing business relationship with Berone.

17.     According to Mills, Reign was able, thanks to this expertise and its business contacts in the finance industry, to could gain access to a commercial trading platform affiliated with BNP Paribas, an international bank, that would allow it Reign to enroll investors' funds in the Program, where those funds would be used to arbitrage international commercial private placement programs.

16.18.  According to Mills, this trading platform was highly exclusive, and Reign was only able to access it thanks to Reign's relationships in the finance industry.  Prime would have been unable to participate in the Program without Reign's assistance.

3

17.19. According to Mills, once Prime deposited its Investment Ffunds with Berone, Reign would open an account with BNP Paribas, an international bank, and, Reign would utilize Prime's that account at Berone to show proof of the funds necessary to enter into the Program's commercial transactions by utilizing Swift MT799 confirmations.

20.    A Swift MT799 is a type of message sent between banks engaged in international trade to confirm funds or proof of deposits.

21.    In approximately late September or early October of 2022, Roglieri and Johnson had a conference call (the "Call") in which Johnson asked whether Prime would like to participate in a $20,000,000 business loan transaction with a lender called Quattro Capital, pursuant to which Prime would supply a bridge loan in anticipation of a larger loan to be thereafter extended to a borrowing entity named World Film Group LLC (the "Quattro Transaction"). World Film Group LLC was and is incorporated in Delaware, but upon information and belief it operates out of New York State. The Quattro Transaction was to be partly overseen by Karo, who would serve as one of the escrow agents with control over the funds, including Prime's bridge loan, that were to be involved in the transaction.

22.    During the Call, Roglieri expressed tentative interest in the Quattro Transaction, but did not commit to proceeding with it. He informed Johnson that he did not want Prime to do business with Karo and requested that Karo's involvement be removed before Prime would consider becoming involved in the Quattro Transaction.

18.23. During the Call, Johnson and Roglieri also discussed the Program transaction which Mills and Roglieri had been negotiating. Johnson explained to Roglieri what the Program was and vouched for Reign's experience in overseeing investments such as the Program. Johnson vouched for the representations that Mills had made to Roglieri about the Program and about Reign's

4

expertise and qualifications, as set forth in Paragraphs 16 through 19 above, including that Reign had the expertise necessary to manage an investment by Prime in the Program, that the Program was a legitimate and safe investment opportunity, and that Reign had connections with the people and entities involved in the Program that would enable Reign to successfully enter Prime's Investment Funds into the Program.

24.     On October 3, 2022, the PartiesRoglieri and Johnson executed the Trade Agreement which conformed to the description of the Program as relayed to Roglieri by Mills and and Johnson.

19.

20.25.  The Trade Agreement incorporates by reference a Joint Venture Agreement dated September 28, 2022, between Reign (executed by Johnson) and Prime (the "JVA") and an Escrow Agreement, also dated September 28, 2022, between Reign (executed by Reign's President, Dr. Adam Klein, who upon information and belief resides and does business in New York), Prime, and a New York Attorney, Aaron Aetra, Esq. (the "Escrow Agreement").  Copies of the JVA and Escrow Agreement are attached hereto as Exhibits B and C respectively.

21.26. The Agreement, JVA, and Escrow Agreement were the subject of extensive telephone and email negotiations between Mills, Johnson, and Roglieri from September 2022 through October 3, 2022.

27.     The written Trade Agreement was presented to Roglieri for signature by Reign.

28.     Roglieri negotiated extensively with Reign regarding the dollar amount to be invested by Prime, regarding the logistical and financial details of Prime's entry into the Program, and regarding the distribution of the profits that Prime expected to be generated by the Program.

29.     However, Prime played no role in drafting the remaining terms of the Trade Agreement that did not relate directly to these subjects.

30.     Prime was not represented by counsel in negotiating the Trade Agreement.

31.     In particular, Prime did not draft Paragraphs 7, 9.2, 10.1, or 11.1 of the Trade Agreement.  Prime also did not directly discuss the terms of any of these paragraphs with Reign prior to signing the Agreement.

32.     At all relevant times, Roglieri conducted ~~these~~ Prime's negotiations with Reign from within the jurisdictional boundaries of the Northern District of New York.

~~22.~~33.  Roglieri signed the Trade Agreement, JVA, and Escrow Agreement from within the jurisdictional boundaries of the Northern District of New York.

~~23.~~34.  Together the Trade Agreement, JVA and Escrow Agreement contemplated an ongoing joint venture between Reign and Prime to take advantage of various opportunities within the Program.

~~24.~~35.  Pursuant to Paragraph 1.1 of the Trade Agreement, the purpose of the Agreement was to "invest funds in the hedge fund [Berone] so that the hedge fund can provide [Reign] the ability to create an account at BNP Paribas and take said account in to the Program[]."

~~25.~~36.  Pursuant to Paragraph 3.4 of the Trade Agreement, Paragraph 1.1 of the Escrow Agreement, and Paragraph 2.13 of the JVA, the anticipated profits yielded from the Program were to be held and disbursed by New York attorney Aaron Aetra, Esq., who was to act as "paymaster" and "escrow agent."  According to Addendum 1 of the Trade Agreement, Aaron Aetra was to perform these services from his office located at 445 Park Avenue – 9th floor, New York, New York.

~~26.~~37.  Pursuant to Paragraph 2.1.6 of the Trade Agreement, Prime reserved the right to "cancel its contract with Berone and [Reign] at any time while under th[e Trade Agreement] due

to non-performance of [the] program. . . ." and was further entitled to a return of the Investment

Funds within 5 to 7 business banking days "without penalty."

38.    Pursuant to Paragraph 1.5 of the Trade Agreement, "[o]n termination or

cancellation of the program, for any reason" or in the event that the Program "did not perform"

Reign was required to take "immediate steps" to "unwind the BNP account and have the hedge

fund release [Prime's Investment Funds] back to their designated account at any banking

institution they should designate."  Further, pursuant to Paragraph 1.5 of the Agreement, Reign

was obligated to ensure that the Investment Funds were returned within 5-7 banking days from the

receipt of a demand for the same from Prime.

39.    Pursuant to Paragraph 2.3 of the Trade Agreement, during the initial period of

entering Prime's Investment Funds into the Program, Reign was required to "provide confirmation

of each major step in the process to [Prime], including when the BNP Paribas account is open,

when [Reign] has received the required [bank conformation letter], submitted to the program, been

approved by the program and the date the program begins."

40.    Pursuant to Paragraph 10.1 of the Trade Agreement, "[i]f either Party breaches this

Agreement, unless otherwise provided herein, the breaching Party shall have ten (10) business

days to cure the breach.  If the breach is not cured within the time allotted, the Agreement may be

voided by the non-breaching Party."

27.41. Pursuant to Paragraph 11.1 of the Trade Agreement, "[Prime] hereby waives all

rights to pursue any action or to claim any liability or obligation on the part of Berone Capital

Fund, LP, RBC Capital Markets or Signature Bank for lack of performance related to this

Agreement and to any proposed profits to be generated under this Agreement.  All rights have been

waved since none of the stated entities are party to this Agreement or have any responsibilities

under this Agreement that pertain to [Prime].  [Prime] has not waived any rights, against any party, with respect to obtaining the return of their initial investment capital."

28.42.  On or about October 4, 2022, Johnson emailed Roglieri, with Karo and Mills copied on the email, to ask inquire again whether Prime would like to participate in a $20,000,000 business loan transaction with an entity called Quattro Capital (the "Quattro Transaction"). Johnson's email also asked a nonparty named Frank Fosco ("Fosco") to provide Roglieri with the documents associated with the Quattro Transaction.

29.43.  According to information the documents Johnson Fosco provided to Roglieri at Johnson's request, the Quattro Transaction was still to be partly overseen by Karo, who was identified as the "Escrow Attorney." who would have control over the funds, including Prime's bridge loan, that were to be involved in the transaction.

30.44.  On October 6, 2023, after reviewing the documents related to the Quattro Transaction and conducting independent due diligence regarding the transaction, Roglieri informed Johnson, and Mills, Fosco, and Karo that Prime was not interested in the transaction as proposed and that it had concerns about – and would not be involved in – any transaction involving Karo.

31.45.  Specifically, Roglieri informed Johnson, Mills, Fosco, and Karo that the documents associated with the Quattro Transaction were internally inconsistent, lacked crucial elements necessary to ensure the protection of Prime's proposed investment, and contained numerous typos, and continued to grant Karo control over the transaction funds even after Roglieri had expressly requested that the documents be revised to remove Karo as an escrow agent.  Roglieri noted that he might reconsider his declination if, instead of Karo, an established and well-insured law firm were to be designated as the escrow agent.

32.46.  Roglieri separately alerted Johnson via email to the fact that an internet search related to Karo revealed that Karo had been sued for his involvement in a separate transaction, and that this lawsuit included allegations of fraud.

47.     Upon information and belief, both before and after the Agreement was signed, as well as both before and after Johnson proposed the Quattro Transaction to Prime, Defendants collectively intended to utilize whatever funds they were able to obtain from Prime to benefit Karo.

48.     Upon information and belief, the Quattro Transaction was not a sham transaction which Defendants jointly concocted and presented to Prime in an unsuccessful attempt to obtain written consent from Prime for Karo to exercise direct control over Prime's fundsreal business opportunity, and instead, was an attempt by Reign, Johnson, Mills and Karo to defraud Prime.

33.

34.49.  On October 10, 2022, Prime emailed Berone and Mills requesting that Berone and Reign assure Prime that if the Program failed, Reign would return the entire $20,000,000 of Prime's Investment Funds.

35.50.  On October 10, 2022, Mills responded via email that "Yes, it would be the whole $20,000,000 that is returned" and further stated that the funds could be returned in no more than two weeks.

36.51.  Mills's October 10, 2022 email also assured Prime that unwinding the account at BNP Paribas, in order to facilitate the return of the Investment Funds, would be Reign's responsibility.

37.52.  On or about October 21, 2022, and pursuant to the wire instructions provided in the JVA, Prime wired the Investment Funds from its New York State CitiBank account to Berone'sa New York State Signature Bank account.

38.   Upon information and belief, there never was a Program and/or Reign never intended to take Prime into the Program.  Defendants, instead, jointly concocted theMills's and Johnson's representations to Prime regarding the sham Program, and regarding Reign's ability to facilitate Prime's participation in the Program, as part of a conspiracy to induce Prime to enter the Trade Agreement and to transfer the Investment Funds to Berone, so that Defendants could use the Investment Funds as collateral to obtain the Fraudulent Loan Proceeds for Karo's benefit.

53.

54.   Mills and Johnson intentionally misrepresented the existence of the Program and/or its their intent to take Prime into the Program, and that Prime's money would be returned in the event the Program failed to perform, in order to induce Prime to transfer the Investment Funds to Berone.

55.   Upon information and belief, all of the Defendants were aware that Karo was the intended beneficiary of their joint scheme to defraud Prime.

56.   Upon information and belief, Mills, Johnson, and Reign made their misrepresentations to Prime with the knowledge and consent of Karo and under his control.

39.57.  Upon information and belief, all of the Defendants were aware that their scheme to defraud Prime would have effects on Prime in New York State.

58.   On or about November 1, 2022, without Prime's knowledge or consent, Reign entered into a line of credit agreement with the Royal Bank of Canada, whereby, Prime's account at Barone was collateralized at the direction of Reign, allowing Reign to take out an $12,000,000 line of credit (the "Loan").

40.59.  Upon information and belief, either Mills, Johnson, or both of them, personally participated in and/or authorized entering and effectuating the Loan.

41.60.  On or about November 7, 2022, without ever having informed Prime that its funds were collateralized, Reign caused the Fraudulent Loan Proceeds (totaling $12,000,000) to be transferred to Karo.

61.   Upon information and belief, either Mills, Johnson, or both of them, personally participated in and/or authorized the transfer of the Fraudulent Loan Proceeds to Karo.

62.   Upon information and belief, the Fraudulent Loan Proceeds were obtained and transferred to Karo with his knowledge and consent.

63.   Upon information and belief, Karo controlled the actions of the other Defendants which resulted in the transfer of the Fraudulent Loan Proceeds to him.

42.64.  Pursuant to Paragraph 1.4 of the Trade AgreementJVA, Reign was not authorized to use Prime's Investment Funds for any purpose other than to participate in the Program.

43.65.  On November 18, 2022, Roglieri emailed Mills stating that "[t]omorrow will mark 4 weeks since we made the $20,000,000 deposit" and inquiring whether "funds [had] been set up on the BNP Paribas side" and or whether the contract to enter the Program had been signed.

44.66.  On November 18, 2022, after Reign had already collateralized the Investment Funds with the Loan and transferred the Fraudulent Loan Proceeds to Karo, Mills responded that he was "in the process of negotiating the contract" and otherwise assured Roglieri that Reign was actively communicating with the Program platform and was actively working on bringing Prime's Investment Funds into the Program.

45.67.  On November 30, 2022, Mills notified Roglieri that it Reign had signed a trade contract with the Program platform but was awaiting a Swift MT799 verification from BNP Paribas to officially start the Program.

46.68.  Upon information and belief, no such contract was ever entered, no account at BNP Paribas was ever created, and Reign never requested a Swift MT799.

69.    Thereafter, between November 30, 2022, and January 24, 2023, Roglieri contacted Mills and Johnson on multiple occasions to inquire whether the Swift MT799 confirmation had been delivered to the Program platform.  Reign (communicating via Mills and Johnson) repeatedly acknowledged  claimed that while the required Swift MT799 confirmation had not yet been delivered, it Reign was continuing to work on the transaction.

70.    All of the representations between November 18, 2022 and January 24, 2023 by Mills, Johnson, and Reign that Reign was taking steps to enter Prime's funds into the Program were knowingly and deliberately false.  Mills, Johnson, and Reign knew at the time of making each of these representations that Prime's funds had already been encumbered for Karo's benefit.

47.71.  All of the representations between November 18, 2022 and January 24, 2023 by Mills, Johnson, and Reign that Reign was taking steps to enter Prime's funds into the Program were made with the intent and effect of preventing Prime from attempting to recover its funds by misleading it into believing that Reign was performing its obligations under the Trade Agreement.

48.72.  On January 24, 2023, Prime notified Mills and Johnson, pursuant to Paragraph 2.1.6 of the Trade Agreement, that it was cancelling its participation in the Program Trade Agreement due to Reign's failure to perform its obligations under the Trade Agreement, and demanded that Reign secure the return of its the Investment Funds.

49.73.  During Prime's ensuing discussions with Johnson regarding the return of the Investment Funds, Johnson acknowledged that Reign it could not secure the return of Prime's Investment Funds because it Reign had improperly co-mingled Prime's Investment Funds with

Reign's own funds or the funds of its other clients and leveraged those funds in connection with a transaction not related to the Program.

74.   Johnson claimed that Reign was actively working to unwind the unrelated transaction, and that it would return the Investment Funds as soon as possible.

50.75. Prime's Investment Funds were not returned following these discussions with Johnson, so on February 2, 2023, Prime's in-house counsel sent Johnson and Mills a formal demand letter demanding the return of the Investment Funds.

51.76. On February 7, 2023, Prime's in-house counsel emailed Johnson and Mills demanding return of the funds and informing Johnson them that if the funds were not returned by February 10, 2023, Prime would commence a lawsuit in the Northern District of New York.

52.77. On February 9, 2023, Reign's general counsel responded to Prime's email by stating, in pertinent part:

> Please be assured that Reign is doing everything it can to resolve this matter as expeditiously as possible. Reign is taking the necessary steps to unravel the transaction so that Prime Capital's funds can be returned. Mr. Johnson and our attorneys are scheduled to meet this Friday, February 10, 2023, with the parties that are directly in control of releasing funds that will effect the return of Prime Capital's funds. We had sent those parties a demand letter for the return of Reign's capital contribution, and the meeting this Friday is the result of that demand. We are hopeful that we will have a resolution tomorrow and that Prime Capital's funds will be returned soon thereafter.

53.78. On February 13, 2023, Reign's general counsel informed Prime via email that it expected the capital that was tying up the Investment Funds to be released on February 14, 2023.

54.79. On February 14, 2023, Johnson informed Roglieri, that the wire had been sent and should be received by Berone shortly.

55.80. No such wire was ever sent.

56.81.  When the wire did not arrive, Roglieri confronted Mills and Johnson, who assured Roglieri that the wire was held up pending receipt of a "confirmation form."

82.   To date, the wire has not been sent, and Prime's Investment Funds are still encumbered by the Loan and have not been returned.

83.   To date, Defendants have never specifically admitted to Prime that the Investment Funds were used as collateral for the Fraudulent Loan Proceeds that were disbursed to Karo.  Prime first learned the nature of the unauthorized Loan, and discovered that the Fraudulent Loan Proceeds had been disbursed to Karo, through communications with Berone in March of 2023.

84.   Upon information and belief, and based on the information shared with Prime by Berone, the "parties that are directly in control of releasing funds" referenced in Reign's written statement of February 9, 2023 (set forth in Paragraph 77 above) include Karo.

57.85.  Berone has also informed Prime that Reign has made no payments on the Loan. Unpaid interest is therefore accruing on the Loan, further encumbering and/or dissipating Prime's Investment Funds.

86.   But for Reign's Defendants' fraud, fraudulent concealment, conversion tortious and wrongful conductand/or breach of the parties' Trade Agreement, Prime would have been able to earn interest on the Investment Funds through other investment opportunities.

87.   Pursuant to ¶ 10.1 of the Trade Agreement, Prime has been entitled to unilaterally cancel the Trade Agreement ever since 10 days elapsed after Reign's first breach of the Trade Agreement, which occurred on or before November 1, 2022 when Reign encumbered the Investment Funds.

88.   Additionally, pursuant to ¶ 10.1 of the Trade Agreement, Prime has also been entitled to unilaterally cancel the Trade Agreement ever since 10 days elapsed after Prime

14

demanded the return of the Investment Funds (a demand first made on January 24, 2023 and repeated multiple times thereafter, including but not limited to on February 2, 2023 and on February 7, 2023) and Reign failed to return the funds.

89.    Prime validly elected to terminate the Trade Agreement by demanding the return of the Investment Funds.

90.    Alternatively, Prime validly elected to terminate the Trade Agreement by commencing this action.

91.    Alternatively, Prime validly elected to terminate the Trade Agreement by affirmatively alleging in the First Amended Complaint in this action that it had terminated the Trade Agreement.

58.92.  Alternatively, to the extent that the Trade Agreement has not already been validly terminated, Prime hereby elects to void the Trade Agreement pursuant to ¶ 10.1 thereof.

59.    By reason of the foregoing, Prime has been damaged by Defendants in an amount to be determined at trial, but no less than $20,000,000.00, plus consequential damages in an amount to be determined at trial including but not limited to profits lost due to Prime's inability to use the Investment Funds for other purposes and the devaluation of Prime's account at Berone which is occurring due to Reign's nonpayment of the Loan, statutory interest from the date(s) of breach, and costs.

60.93.  Pursuant to Paragraph 6.4.2 of the Trade Agreement, Prime is also entitled to recover its attorneys' fees and costs in this action from Reign.

## FIRST CAUSE OF ACTION: FRAUD

### (All Defendants)

61.94.  Plaintiff adopts by reference and incorporates herein the allegations set forth above.

95.   Reign, acting by and through its COO Mills and Johnson, and as well as at the direction of, or and with the full knowledge and substantial assistance of, Johnson and Karo, knowingly, and falsely represented to Prime that it had the expertise, connections, and intent towould utilize the Investment Funds in connection with the Program.

62.96.  These false representations were made to induce Prime to place the Investment Funds with Barone, where Reign could then collateralize the Investment Funds to obtain the Fraudulent Loan Proceeds for Karo's benefit.

63.97.  In reality, Johnson, Mills, and Reign, and Karo were aware at the time Mills and Johnson made these material misrepresentations to Prime that there was no Program and/or that Reign had no ability or intention to bring Prime into the Program.  , and iInstead, Reign, Mills, and Johnson, and Karo intended at all times, to utilize Prime's Investment Funds to obtain the Fraudulent Loan Proceeds for Karo's benefit.

64.98.  Prime's reliance on these statements was justified by the verbal representations made by Mills and Johnson regarding the nature of the Program and regarding Reign's ability and intent to bring Prime's funds into the Program, Mills's subsequent assurances that the entire amount of the Investment Funds would be returned within two weeks in the event the Program did not perform, and the mutual promises and obligations made in the parties' Trade Agreement, JVA, and Escrow Agreements.

99.    At all relevant times, Reign, Johnson, Mills and Karo acted in concert to defraud Prime of the Investment Funds. Reign, acting by and through its officers, Mills and Johnson, overtly solicited Prime to invest in false business opportunities, including the Program and the Quattro Transaction, in order to obtain the Fraudulent L<del>l</del>oan Proceeds <ins>for Karo's benefit</ins>.

100.    <ins>After November 1, 2023, Reign, Johnson, and Mills, intentionally misrepresented and concealed the status of the Investment Funds by falsely claiming that they were still working to take Prime's Investment Funds into the Program.</ins>

101.    <ins>These misrepresentations of the status of Prime's Investment Funds were undertaken to prevent Prime from discovering Defendants' misconduct, and had the effect of causing Prime to rely upon these misrepresentations in not requesting a return of the Investment Funds until long after any chance of recovering the Investment Funds and/or the Fraudulent Loan Proceeds had passed.</ins>

<del>65.</del><ins>102.</ins>    <ins>Upon information and belief, the aforementioned misrepresentations by Reign, Mills, and Johnson were all made at the direction of and with the knowledge and consent of Karo.</ins>

<del>66.</del><ins>103.</ins>    Reign's corporate officers, Mills and Johnson, are personally liable to Prime for Prime's damages because of their actual knowledge of and/or personal participation in the scheme to obtain the Fraudulent Loan Proceeds.

<del>67.</del><ins>104.</ins>    Karo is <ins>personally</ins> liable to Prime as a result of his role in the scheme, including for aiding and abetting the fraud and <ins>for</ins> accepting the Fraudulent Loan Proceeds <ins>despite his knowledge that he was not authorized to accept those proceeds and that Prime expressly wished to avoid giving his access to Prime's funds or becoming involved in business dealings with him</ins>.

68.105.        Defendants' action evince a high degree of moral turpitude and demonstrate such wanton dishonesty as to imply a criminal indifference to their civil obligations.

69.106.        As a result of Prime's reliance on the material misrepresentations of Reign, Mills and Johnson, which were made as part of a premeditated conspiracy with Karo, Prime has been injured in an amount to be determined at trial, but not less than $20,000,000, plus punitive and consequential damages in an amount to be determined at trial, together with, costs and such other and further relief the Court deems appropriate and necessary.

### SECOND CAUSE OF ACTION: FRAUDULENT CONCEALMENT

### (Defendants Reign, Mills and Johnson)

70.     Plaintiff adopts by reference and incorporates herein the allegations set forth above.

71.     On and after November 7, 2023, after Defendants obtained the Fraudulent Loan Proceeds Reign, Johnson and Mills intentionally concealed the fraud, by falsely claiming that they were still working to take Prime's Investment Funds into the Program, in order to deter Prime from discovering their fraud.

72.     As a result of this fraudulent concealment, Prime did not seek a return of its Investment Funds until well after any chance of recovering the Fraudulent Loan Proceeds had passed.

73.     As a result of Reign, Johnson and Mills' intentional concealment, Reign was injured in an amount to be determined at trial, but not less than $20,000,000, plus punitive and consequential damages in an amount to be determined at trial, together with, costs and such other and further relief the Court deems appropriate and necessary.

## ~~THIRD~~ SECOND **CAUSE OF ACTION:** ~~BREACH OF CONTRACT~~PROMISSORY ESTOPPEL

### (Defendant<ins>s</ins> Reign<ins>, Mills, and Johnson</ins>)

~~74.~~107.        Plaintiff adopts by reference and incorporates herein the allegations set forth ~~in paragraphs 1-10, 15-27, 37, 40-43, 45 and 47-57~~ above.

108.    ~~Pursuant to~~ <ins>Both before and after the execution of</ins> the Trade Agreement, <ins>as well as in the Trade Agreement,</ins> <ins>Reign, Mills and Johnson</ins> promised Prime that ~~upon cancellation of the Trade Agreement and due demand from Prime~~<ins>if the Program was not a success</ins>, Reign ~~was required~~ <ins>had a duty</ins> to take ~~steps to~~ secure the return of the Investment Funds <ins>to Prime</ins>.

109.    <ins>Both before and after the execution of the Trade Agreement, as well as in the Trade Agreement, Reign, Mills and Johnson promised Prime that Reign would use Prime's Investment Funds for the Program.</ins>

110.    <ins>Reign, Mills, and Johnson also promised Prime, in ¶ 1.4 of the JVA as well as in their written and verbal negotiations regarding the Program, that the Investment Funds would not be used for any purpose other than investing in the Program.</ins>

111.    <ins>Prime justifiably relied on these assurances by Reign, Mills, and Johnson when it remitted the Investment Funds to Berone.</ins>

~~75.~~112.        <ins>Reign, acting through Mills and Johnson, failed to invest Prime's funds in the Program.</ins>

113.    In ~~addition~~<ins>stead</ins>, Reign ~~has breached the Trade Agreement by~~ commingl<ins>ed</ins>~~ing~~ Prime's Investment Funds with its own funds and~~/~~<ins>or</ins> the funds of other investors and using Prime's Investment Funds to participate in a transaction~~n investment~~ that was not authorized by the ~~Trade~~

19

AgreementPrime, namely taking out the Loan, which resulted in the unauthorized collateralization of Prime's Investment Funds and in Karo's receipt of the Fraudulent Loan Proceeds.

114.     Prime has no valid and enforceable contracts with Mills or Johnson as individuals.

115.     Prime has no valid and enforceable contract with Reign because it has validly cancelled the Trade Agreement.

76.116.     Despite Prime's cancellation of the Trade Agreement on January 24, 2023 and despite Prime's simultaneous due demand for the return of the Investment Funds to it, Reign failed to take the necessary steps to return the Investment Funds.

77.117.     Accordingly, Reign. Mills, and Johnson failed to honor their promises to Prime has breached the Trade Agreement by failing to take the necessary steps to secure the return the Investment Funds to Prime.

78.1.   In addition, Reign has breached the Trade Agreement by comingling Prime's Investment Funds with its own funds and or the funds of other investors and using Prime's Investment Funds to participate in an investment that was not authorized by the Trade Agreement.

79.118.     By reason of the foregoing, Prime has been damaged by Reign's breach of contract in an amount to be determined at trial, but not less than $20,000,000.00, plus consequential damages in an amount to be determined at trial, together with statutory interest from the date(s) of breach, costs and such other and further relief the Court deems appropriate and necessary.

80.     Further, Pursuant to Paragraph 6.4.2 of the Trade Agreement, Prime is entitled to recover its attorneys' fees and costs in this action from Reign.

### THIRD CAUSE OF ACTION: UNJUST ENRICHMENT

### (Defendant Karo)

119.     Plaintiff adopts by reference and incorporates herein the allegations set forth above.

120.    Prime has no valid and enforceable contract with Karo.

121.    Karo was enriched, at Prime's expense, by receiving the Fraudulent Loan Proceeds.

122.    It would be against equity and good conscience to permit Karo to retain the benefit he received at Prime's expense from the Fraudulent Loan Proceeds.

123.    Karo would be unjustly enriched if he were permitted to retain the Fraudulent Loan Proceeds.

124.    Karo is therefore liable to Prime for the full balance of the benefit he received at Prime's expense, totaling $12,000,000.00, plus consequential damages in an amount to be determined at trial, as well as any pre- and post-judgment interest to which Prime is entitled by law, and such other and further relief as the Court deems appropriate and necessary.

## FOURTH CAUSE OF ACTION: CONVERSION

### (All Defendants Reign)

81.125.        Plaintiff adopts by reference and incorporates herein the allegations set forth in paragraphs 1-10, 15-27, 37, 40-43, 45 and 47-57 above.

82.126.        On or about October 21, 2022, pursuant to the Trade Agreement and JVA, Prime wired the Investment Funds to Berone for use by Reign in the Program.

127.    Since being wired to Berone on October 21, 2022, the Investment Funds have been in a specific account of which Prime is the owner.

83.128.        At all times, Prime had a superior right of possession in the Investment Funds over that of ReignDefendants.

129.    The Investment Funds were designated for a particular purpose, namely for use in the Program.

84.

85.130.        Pursuant to Paragraph 1.4 of the ~~Trade Agreement~~JVA, Reign was not authorized to comingle Prime's Investment Funds with its own funds or that of any other investors or to aggregate those funds for purposes of collateralizing the same.

131.    According to statements made by Reign, Mills, and Johnson~~'s officers and directors to Prime's sole member on or~~ after ~~it~~ Prime demanded the return of its Investment Funds, in contravention of Paragraph 1.4 of the ~~Trade Agreement~~JVA, Reign co-mingled Prime's Investment Funds with its own funds or the funds of its other clients and leveraged those funds in connection with a transaction not related to the Program.

132.    More specifically, upon information and belief based upon information shared with Prime by Berone, in November 2022, Reign used the Investment Funds to obtain the Loan, which was then used to remit the Fraudulent Loan Proceeds to Karo.

133.    Upon information and belief, Reign's unauthorized encumbrance of the Investment Funds was personally effectuated or authorized by Mills and/or Johnson.

134.    Since at least November 1, 2022, the date on which Reign took out the Loan, Prime has been entitled to immediate possession of the Investment Funds because Reign's authority over the Investment Funds was expressly limited to using the Investment Funds for the Program.

86.135.        Upon information and belief, Reign's unauthorized encumbrance of the Investment Funds was done with the knowledge of, and under the direction of, Karo.

87.136.        ~~Reign~~ Defendants did not have a legal right to so encumber the Investment Funds.

88.137.        ~~These~~ Defendants' actions in encumbering the Investment Funds were taken without the authority, consent, or knowledge of Prime.

138.   ~~As a result of~~By these unauthorized actions, ~~Reign~~ Defendants interfered with Prime's right of possession in the funds.

139.   By deliberately concealing from Prime the status of the Investment Funds from November 2022 to the present, Defendants Reign, Mills, and Johnson have further exercised unauthorized dominion over the Investment Funds.

140.   Upon information and belief, this concealment of the status of the Investment Funds has been done with the knowledge of, and under the direction of, Karo.

141.   After Prime demanded the return of the Investment Funds on January 24, 2023, Defendants Reign, Johnson, and Mills persisted in exercising unauthorized dominion over the Investment Funds.

142.   Specifically, Reign, Johnson, and Mills failed to return the Investment Funds upon demand.

143.   Upon information and belief, from November 7, 2022 onwards, Karo has knowingly and deliberately contributed to Reign's unauthorized exercise of dominion over the Investment Funds, and its resulting failure to return the Investment Funds, by failing to return the Fraudulent Loan Proceeds, which is a prerequisite to the release of Prime's improperly encumbered Investment Funds.

144.   Karo has persisted in his failure to return the Fraudulent Loan Proceeds notwithstanding his knowledge that Prime has demanded the return of the Investment Funds and that the Investment Funds cannot be released until he returns the Fraudulent Loan Proceeds.

~~89.~~145.   Following Reign's procurement of the Loan, all of the Defendants have further exercised unauthorized dominion over the Investment Funds by failing to make payments

23

on the Loan, which has resulted in additional encumbrance of and/or depletion of the Investment Funds.

90.146.        As a result of the foregoing, Prime sustained and continues to sustain losses by reason of its inability to access the Investment Funds, lost investment opportunities and interest it could have earned had the Investment Ffunds been timely returned, and depletion of the Investment Funds.

91.147.        Reign is Defendants are therefore liable to Prime for the full balance of the funds they converted, totaling $20,000,000.00, plus consequential damages in an amount to be determined at trial, as well as any pre- and post-judgment interest to which Prime is entitled by law, and such other and further relief as the Court deems appropriate and necessary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Prime Venture Capital, LLC, demands Judgment against Defendant Reign Financial International, Inc., as follows:

On the First Cause of Action, a money judgment against Defendants Reign Financial International, Inc., Gary Mills, Giorgio Johnson and Martin Karo for fraud in an amount to be determined at trial, but not less than $20,000,000.00, plus punitive and consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary;

On the Second Cause of Action, a money judgment against Defendants Reign Financial International, Inc., Gary Mills and Giorgio Johnson for fraudulent concealment promissory estoppel in an amount to be determined at trial, but not less than $20,000,000.00, plus punitive and consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary;

24

On the Third Cause of Action, a money judgment against Defendant Martin Karo Reign Financial International, Inc. for breach of contract unjust enrichment in an amount to be determined at trial, but not less than $1220,000,000.00, plus consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary;

On the Fourth Cause of Action, a money judgment against Defendants Reign Financial International, Inc., Gary Mills, Giorgio Johnson, and Martin Karo for conversion in an amount to be determined at trial, but not less than $20,000,000.00, plus consequential damages in an amount to be determined at trial, together with its attorney's fees, pre and post judgment interest, costs and such other relief as this Court deems just and necessary.

Dated: March 9 _____, 2023
      Albany, New York

                   GIRVIN & FERLAZZO, P.C.

            By:_____

                   Daniel S. L. Rubin, Esq.
                   Bar Roll No.:  518414
                   Patrick J. Fitzgerald, Esq.
                   Bar Roll No.: 511103
                   Bonnie R. Watson, Esq.
                   Bar Roll No.: 701354
                   *Attorneys for Plaintiff*
                   20 Corporate Woods Boulevard
                   Albany, New York 12211
                   Tel:    518-462-0300
                   Fax:    518-462-5037
                   Email: dsr@girvinlaw.com
                   Email: pjf@girvinlaw.com

TO    Adam R. Shaw, Esq.
        BOIES SCHILLER FLEXNER LLP
        *Attorneys for Defendants*
        30 South Pearl Street, 11th Floor
        Albany, New York 12207
        Tel: (518) 434-0600

Fax: (518) 434-0665
ashaw@bsfllp.com

Blake Goebel, Esq.
Cameron C. Miller, Esq.
BOIES SCHILLER FLEXNER LLP
*Attorneys for Defendants*
1401 New York Ave. NW
Washington, DC 20005
Tel: (202) 237-2727
Fax: (202) 237-6131
bgoebel@bsfllp.com
cmiller@bsfllp.com