

200 WEST 41ST STREET
17TH FLOOR
NEW YORK, NY 10036-7203
TELEPHONE (212) 972-3000
TELEFAX (212) 972-2245
WWW.KLESTADT.COM

Fred Stevens
Direct Dial: (212) 679-5342
Email: fstevens@klestadt.com

July 7, 2025

**BY ECF**

**Hon. Frederick J. Scullin, Jr., USDJ**
**Hon. Daniel J. Stewart, USMJ**
United States District Court, NDNY
James T. Foley U.S. Courthouse
445 Broadway, Room 112
Albany, New York 12207

Re:   **Prime Capital Ventures, LLC v. Reign Financial International, Inc.**
      **Case No. 23-cv-207 (FJS/DJS)**
      **In re Prime Capital Ventures, LLC, USBC NDNY Case No. 24-11029 (REL)**
      **Request for Ruling With Respect to Discovery in the Bankruptcy Court**

Dear Judges Scullin and Stewart:

We are special litigation counsel to Yann Geron (the "Trustee"), chapter 11 trustee of Prime Capital Ventures, LLC ("Prime"), in connection with its chapter 11 bankruptcy case currently pending before the U.S. Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") under Case No. 24-11029 (REL) (the "Bankruptcy Case"). We write to request that the Trustee be authorized to pursue discovery related to the transactions underlying the above-referenced litigation pending before this Court under Fed. R. Bankr. P. 2004 in the Bankruptcy Court.

When this case was commenced, Prime was under the control and direction of Kris Roglieri ("Roglieri"), Prime's sole member and manager. Prime and its assets were under the control of a series of professional fiduciaries as a result of several cases commenced before this Court and the Bankruptcy Court starting with Christian H. Dribusch as interim chapter 7 trustee (for 19 days from Dec. 21, 2023 to Jan. 9, 2024)[1], then Paul H. Levine as federal equity receiver (from Jan 12, 2024 effectively until May 15, 2024, although he still technically holds the position)[2], then Christian H. Dribusch as chapter 7 trustee of the bankruptcy estate of Roglieri (from May 15, 2024 to May 23, 2025)[3], then Marianne T. O'Toole as successor bankruptcy trustee of Roglieri's estate

---

[1] *See In re Prime Capital Ventures, LLC*, Case No. 23-11302 (REL) (Bankr. N.D.N.Y. Dec. 21, 2023).
[2] *See Compass-Charlotte 1031, LLC v. Prime Capital Ventures, LLC*, Case No. 24-cv-55 (MAD/DJS) (N.D.N.Y. Jan. 12, 2024).
[3] *See In re Kris Daniel Roglieri*, Case No. 24-10157 (REL) (Bankr. N.D.N.Y. 2024).

Hon. Frederick J. Scullin, Jr., USDJ
Hon. Daniel J. Stewart, USMJ
July 7, 2025
Page -2-

(for 9 days from May 27, 2024 to June 5, 2025).  On June 5, 2025, upon order of the Bankruptcy Court, the United States Trustee appointed the Trustee, which appointment was subsequently approved by the Bankruptcy Court, and Prime is under the exclusive control of the Trustee, an experienced and independent fiduciary.

The Trustee is actively investigating Prime's financial affairs including its collection and dissipation of over $100 million.  Thus far, the Bankruptcy Court has authorized the Trustee (and Prime) to issue subpoenas *duces tecum* upon individuals and entities with knowledge of Prime's financial affairs.[4]  To date, the Trustee (and Prime) have issued approximately 65 subpoenas pursuant to Bankruptcy Court orders.

One significant part of the Trustee's investigation is Prime's transfer of $20 million to Berone Capital Fund LP, which is the subject of this litigation.  As a newcomer and professional fiduciary, the Trustee must conduct an independent investigation and cannot rely upon Prime's pleadings drafted under the direction of prior management.  Indeed, Prime's prior managers who committed Prime to the transactions at issue and directed this litigation have either pled guilty to or been indicted on federal charges of wire fraud, conspiracy to commit wire fraud and other crimes in connection with Prime's business.[5]  This transaction and the relationship between the parties are shrouded in mystery and the Trustee needs discovery in order to determine precisely where Prime's $20 million went, how to recover it, and who should be liable for its return.  Further, the Trustee needs to investigate claims for the avoidance of fraudulent transfers under 11 U.S.C. §§

---

[4] *See Orders of the Bankruptcy Court Authorizing the Issuance of Subpoenas to the named parties at Bankruptcy Case*, (i) Dkt. No. 73 dated Dec. 2, 2024 (Barclay Damon LLP); (ii) Dkt. No. 203 dated April 24, 2025 (ABNB Federal Credit Union, Citibank NA, Farmers State Bank, Interactive Brokers, KeyBank, M&T Bank, Quad City, Royal Bank of Canada, United Bank, THREAD Bank, and Wells Fargo); (iii) Dkt. No. 204 dated April 24, 2025 (Cullen and Dykman LLP, Girvin & Ferlazzo, P.C., Hill Ward Henders, and Sheppard, Mullin, Richter & Hampton); (iv) Dkt. No. 236 dated May 7, 2025 (Adam Steinberg, Alex Vasilakos, Andrew Altschuler, Brandon Wheeless (as an insider), Chris Snyder, Gary Lockwood, Jon Cosentino, Kimberly Humphrey, a/k/a Kimberly Owen, Lukas Bull, Michael Geisler, Thor Mault, and Victoria Swann); (v) Dkt. No. 237 on May 7, 2025 (ALUX Properties, LLC, Bailey Atlanta, LLC, Bailey Hotel, LLC, Bailey Wellness Center, LLC, Bailey, LLC, Bailey-ATL Atlanta, LLC, Blackwater Capital Group, LLC, Brandon Wheeless (as an ALUX participant), Chamblee Ryan, P.C., Kim Firm LLC, Taylor English Duma LLP, and Vanguard Holdings Group, LLC); (vi) Dkt. No. 299 dated June 20, 2025 (Matthew Thacker-Rhodes and Bravo Enterprises Mid-South, LLC); and (vii) Dkt. No. 300 dated June 20, 2025 (Truss Financial LLC, REV2, LLC, CJI Trading LLC); (viii) Dkt. No. 302 dated June 20, 2025 (Hudson & Hudson LLC and Norwell Ventures, LLC; (ix) Dkt. No. 301 dated June 20, 2025 (1stDibs.Com Inc., Automotive Intellect Design, d/b/a Ai Design, Bonhams Butterfields Trust, Cars USA Shipping LLC, Cedric DuPont Antiques, Giganti & Giganti Fine Jewelry, G-Man LLC (and City National Bank for identity purposes), Hunter Motorsports, Luxury Bazaar, JK Technologies, New Country Motor Car Group, Platinum Times LLC, RENNtech, Inc., RM Sotheby's, S2T LLC, Timepiece Trading, LLC, Topgear LLC Top Gear Imports, Visbeen Architects, Wrist Aficianado, XO Global LLC, Hudson & Hudson, LLC, Norwell Ventures, LLC, Lindsey Fisher-Hudson, Henry Fisher, and HF Rentals, LLC).

[5] *See U.S.A. v. Kris Daniel Roglieri*, Case No. 24-cr-00392 (MAD) (N.D.N.Y. May 28, 2024) (superseding indictment filed June 12, 2025 asserting six counts of conspiracy to commit wire fraud and wire fraud); *U.S.A. v. Christopher Snyder*, Case No. 25-cr-195 (MAD) (N.D.N.Y. May 16, 2025) (defendant pled guilty to conspiracy to commit wire fraud in connection with Prime's fraudulent investment scheme); *U.S.A. v. Kimberly Humphrey*, Case No. 25-cr-238 (MAD) (June 10, 2025) (defendant plead guilty to conspiracy to commit wire fraud in connection with Prime's fraudulent investment scheme and to health care fraud in connection with another business venture).

**Hon. Frederick J. Scullin, Jr., USDJ**
**Hon. Daniel J. Stewart, USMJ**
July 7, 2025
Page -3-

544 and 548(a), and N.Y. Debtor & Creditor Law §§ 271 *et seq.*, that were unavailable to Prime at the time it filed the instant action.

Accordingly, on May 6, 2025, Prime filed an application to serve subpoenas upon the defendants in this action and other parties with respect to the transactions and tracing the funds transferred by Prime. Bankruptcy Case Dkt. No. 228. Objections to the application were filed by the defendants and Berone Capital Fund LP. *Id.* at Dkt. Nos. 279 and 281, respectively. The objections were primarily based upon the "pending proceeding rule" based on the existence of the instant action. *See, e.g., In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). When the Trustee was appointed, he adopted Prime's pending application and went forward with the hearing scheduled for June 18, 2025. *Id.* at Dkt. No. 289. While the Trustee believes that the pending proceeding rule does not apply and can and should be disregarded by the Bankruptcy Court here[6], prior to oral argument at the hearing, the Bankruptcy Court stated its need for direction from this Court given the pending proceeding, as follows:

> The Berone [Reign] situation, Mr. Stevens, I'm very uncomfortable with the litigation upstairs that in effect - - I won't say I'm second guessing, but I'm treading into areas that, for purposes of comity with the District Court and Magistrate Stewart, I'm just not comfortable going ahead with that application until we have some indication – I believe Judge Stewart said they were not going to open limited discovery, that was a while ago, that perhaps the situation has changed. Before I start treading into that area, I would like to have some indication from District Court or from Judge Stewart that whatever position – if it's the same, that's fine. I just want an updated direction. And obviously, at some point we have to figure out Berone and [Reign]. But I'm not going to tread without some knowledge of where the District Court is on the discovery question upstairs.

Hr'g Tr., pp. 8-9. A copy of the transcript is annexed hereto as Exhibit A.

Accordingly, as instructed by the Bankruptcy Court, we are writing to obtain this Court's position with respect to the Trustee proceeding with discovery on these matters before the Bankruptcy Court pursuant to Fed. R. Bankr. P. 2004. For all the reasons stated herein, the Trustee has a heightened need and an actual statutory mandate to investigate these matters[7], and he respectfully submits that he should be permitted to proceed with the discovery before the Bankruptcy Court.

---

[6] *See, e.g., In re Coffee Cupboard, Inc.*, 128 B.R. 509 (Bankr. E.D.N.Y. 1991) (court allowed a creditor's B.R. 2004 examination when there was a pending action that did not involve the trustee for the purpose of discovering potential avoidance actions and transfers made by the debtor); *In re Int'l Fibercom*, 283 B.R. 290 (Bankr. Ariz. 2022) (court allowed B.R. 2004 discovery with pending litigation because it did not appear that the movant was circumventing matters in the litigation but obtaining information relevant to administration of the estate); *In re Washington Mutual, Inc.*, 400 B.R. 45 (Bankr. Del. 2009) (court rejected a proposed examinee's objection to B.R. 2004 discovery because it was not a party to the referenced pending litigation).

[7] *See* 11 U.S.C. § 1106(a)(3) (A trustee shall – (3). . . investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, . . .).

**Hon. Frederick J. Scullin, Jr., USDJ**
**Hon. Daniel J. Stewart, USMJ**
July 7, 2025
Page -4-


       We can and will submit supplemental pleadings and/or attend any conference or hearing on this matter that this Court may direct.

                                 Respectfully submitted,

                                   Fred Stevens

FS:moh
Attachments

cc:     Yann Geron, Chapter 11 Trustee
        Email: ygeron@geronlegaladvisors.com

        Matthew A. Toporowski, Esq.
        Counsel to the Defendants
        Email: Matt@ToporowskiLaw.com

        Robert D. Nosek, Esq.
        Counsel to Beron Capital Fund LP, and Affiliated Persons and Entities
        Email: rnosek@certilmanbalin.com

        Daniel S. L. Rubin, Esq.
        Counsel of record to Plaintiff
        Email: dsr@girvinlaw.com

**Hon. Frederick J. Scullin, Jr., USDJ**
**Hon. Daniel J. Stewart, USMJ**
July 7, 2025
Page -5-

# Exhibit A

# Transcript of Bankruptcy Court Hearing – June 18, 2025

Page 1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF NEW YORK

Case No. 24-11029

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

Prime Capital Ventures, LLC,

       Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

               James T. Foley United States Courthouse

               445 Broadway, Suite 330

               Albany, NY 12207

               June 18, 2025

               10:35 AM

B E F O R E :

HON. ROBERT E. LITTLEFIELD, JR.

U.S. BANKRUPTCY JUDGE

ECRO:  KATE SITCER

Page 2

HEARING re Motion for 2004 Examination of Parties in Connection with Debtor's Transfers to Bravo Enterprises Mid-South LLC and Matthew Thacker-Rhodes Filed by Prime Capital Ventures, LLC (Docket No. 224)

Motion for 2004 Examination of Parties in Connection with Transfers to Indigo Pharmaceutical LLC Filed by Prime Capital Ventures, LLC (Docket No. 226)

Motion for 2004 Examination of Parties and Financial Institutions in Connection with the Debtor's Transfer of $20 Million to Berone Capital Fund LP Filed by Prime Capital Ventures, LLC (Docket No. 228)

Motion for 2004 Examination of Transferees of the Debtor on Account of Goods and Services that the Debtor Suspects were for the Benefit of Non-Debtor(s) Filed by Prime Capital Ventures, LLC (Docket No. 265)

Motion for 2004 Examination of Parties in Connection with the Debtor's Lending Transactions with Norwell Ventures, LLC and Hudson & Hudson LLC Filed by Prime Capital Ventures, LLC (Docket No. 267)

Transcribed by:  Lindsay Peacock

A P P E A R A N C E S :


OFFICE OF THE UNITED STATES TRUSTEE

Office of the United States Trustee

Leo W. O'Brien Federal Building

11A Clinton Avenue, Room 620

Albany, NY 12207


BY:  LISA M. PENPRAZE


KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

Special Litigation Counsel for Chapter 11 Trustee,

Yann Geron

200 West 41st Street, 17th Floor

New York, NY 10036


BY:  FRED STEVENS


CERTILMAN BALIN ADLER & HYMAN, LLP

Attorney for Berone Capital, et al

90 Merrick Avenue

East Meadow, NY 11554


BY:  ROBERT DONALD NOSEK (TELEPHONICALLY)

NICOLE MILONE (TELEPHONICALLY)

CHAPMAN and CUTLER

     Attorney for ER Tennessee

     1270 6th Ave 30th floor

     New York, NY 10020

BY: JOE LOMBARDO (TELEPHONICALLY)

ALSO APPEARING TELEPHONICALLY:

     YANN GERON

     KRIS DANIEL ROGLIERI

Page 5

P R O C E E D I N G S

MS. SITCER:  Good morning.  This is Kate, from Judge Littlefield's Chambers.  We are starting our Wednesday, Chapter 11 calendar.  We will go right on the record with the first matter, which is case number 24-11029, Prime Capital Ventures.  We'll start with the motion for 2004 examinations at documents number 224, 226, 265, and 267.

Will the parties please note their appearances for the record?

MS. PENPRAZE:  Good morning, Your Honor.  Lisa Penpraze, Office of the U.S. Trustee.

MR. STEVENS:  Good morning, Your Honor.  Fred Stevens, Klestadt Winters Jureller Southard & Stevens, proposed Special Litigation Counsel to Yann Geron, the Chapter 11 Trustee.

THE COURT:  Do we have telephonic appearances?

MR. ROGLIERI:  Good morning, Your Honor.  Kris Roglieri.

MR. GERON:  Good morning -- I'm sorry.  Go ahead.

MR. ROGLIERI:  I don't know if -- I said good morning, Your Honor.  Kris Roglieri.

THE COURT:  Good morning.

MR. GERON:  Good morning, Your Honor.  This is Yann Geron.  I am the Chapter 11 Trustee.

Page 6

MR. NOSEK:  Good morning, Your Honor.  Robert Nosek, Certilman Balin Adler & Hyman.  I just was admitted pro hac vice this morning.  And with me is Nicole Milone, who is admitted in this District, and we are for Berone Capital Fund LP, Berone Capital Partners LLC, Berone Capital LLC, Berone Capital Equity Fund I LP, 405 Motorsports LLC, Jeremiah Beguesse, B-E-G-U-E-S-S-E, and Fabian Stone.

THE COURT:  Other appearances?

Ms. Penpraze, does the United States Trustee take a position, or are you more interested observer today?

MS. PENPRAZE:  Good morning, Your Honor.  The only position the U.S. Trustee takes at this point is seeing that the Chapter 11 Trustee continues with the proposed examinations.  As the Court is aware, there are many, many financial transactions that occurred pre-petition, that it is very important for the Estate to have discovery on, considering that there was virtually no records provided by Prime Capital Ventures after this case was filed, I guess you could say, even before that, in the previous cases, Your Honor.  So to that extent, the U.S. Trustee supports the Chapter 11 Trustees' pursuit of this information.  Thank you.

THE COURT:  Counselors, let's start with -- There were four or five applications before the Court, and there's only one with opposition.  What I'm going to do, Mr.

Page 7

Stevens, is without opposition, I'm going to grant the ones that did not have opposition in order to be submitted.

MR. STEVENS:  Thank you, Your Honor.  And if I may, with respect to the application, the $20 million seeking information, I'm talking about Docket number 228 -- Oh, no, I'm sorry, that's the -- that is the Berone.  I'm referring to Docket number 226, the Indigo Pharmaceutical application.  We had agreed, and communicated with Chambers, back to one of the prior adjourn dates, Indigo has voluntarily, voluntarily produced a tremendous amount of information that we would seek an adjournment with respect to Indigo only, not the (indiscernible) And if that's okay, may we adjourn that one application only with respect to Indigo, to (indiscernible)

THE COURT:  Give me a date.

MR. STEVENS:  July 9th.  We have hearings (indiscernible)

THE COURT:  Ms. Sitcer, is there any reason from the clerk's office that we can't creatively deal with part of that motion, and just take -- adjourn that one proposed examinee to July 9th?

MS. SITCER:  No, I believe that one is separate from the others, so we would (indiscernible)

THE COURT:  So we'll show that one adjourned.  The others, without opposition, maybe -- are granted with

orders.

MR. STEVENS:  There are portions of that application that were not opposed, separate from Indigo. What we -- We did this once before with the law firm examination motion, where we did with Hogan Lovells.  So if it pleases the Court, I can submit an order that grants it with respect to the non-objecting examinees, and adjourns the matter for Indigo.

THE COURT:  That works for me, Mr. Stevens.

MR. STEVENS:  Thank you very much, Your Honor. And we've already circulated a proposed order for Counsel's approval, which they were okay with provided it's okay (indiscernible)

THE COURT:  We'll show an order I consent then, and I'll assume by the time he gets to me, it will have been properly vetted, and then we can go from there.

MR. STEVENS:  Thank you very much, Your Honor.

THE COURT:  The Berone Rain situation, Mr. Stevens, I'm very uncomfortable with the litigation upstairs that in effect -- I won't say I'm second guessing, but I'm treading into areas that, for purposes of comity with the District Court and Magistrate Stewart, I'm just not comfortable going ahead with that application until we have some indication -- I believe Judge Stewart said they were not going to open limited discovery, that was a while ago,

Page 9

that perhaps the situation has changed.  Before I start treading into that area, I would like to have some indication from the District Court or from Judge Stewart that whatever position -- If it's the same, that's fine.  I just want an updated direction.  And obviously, at some point we have to figure out Berone and Rain.  But I'm not going to tread without some knowledge of where the District Court is on the discovery question upstairs.

MR. STEVENS:  Okay.

THE COURT:  And I look to you for guidance.  So what I'll do is I'll adjourn that rather than deny it, or -- I'll adjourn it.  You tell me how long it's going to take to do something upstairs with -- I assume it would be Judge Stewart since I believe it was his order, and see where we are with -- vis-a-vis the District Court, the Magistrate Judge, and what, if any, position they will give us, information, position, guidance they will give us regarding the discovery in my Court, as opposed to a backdoor in their Court.

MR. STEVENS:  I --

THE COURT:  It's an interesting situation, uncomfortable situation.

MR. STEVENS:  I do have the answers to all the questions.  But I think Your Honor has indicated that there is probably nothing I can say that is going to convince you

to let me have the discovery today.

PROFESSOR CAPRA:  You're correct on that.

MR. STEVENS:  Okay.  So I will -- I've learned enough, I've appeared enough before Your Honor to know that I will -- it's best to sit, and go provide the Court with what it would -- what it requests.

THE COURT:  How much time do you need to get to hopefully have the District Court or the Magistrate Court address the situation before me?

MR. STEVENS:  I don't -- So the reason I can't answer that, I can answer how long it will take me to get something before the District Court.  What I don't know is how long it will take the District Court to provide a ruling.

THE COURT:  Well, I guess how long will it take you to tee up something that would give us some comfort one way or the other?

MR. STEVENS:  I would -- I think by the end of next week.  And the only reason I think it will take that much time to get something filed, I don't know how long will take for ruling, is just because I'd like to provide an order, and provide a copy of the transcript, so I can inform the Court exactly what this Court's issue is.

THE COURT:  What if we do this?  What if we -- We'll pick a date for an adjourn date, but if the District

Page 11

Court provides guidance before that they will be adjourned, then we'll move it back, and we'll figure out a day, if it's just beyond a motion day, we'll go to a non-motion day.  But we'll pick a day that's comfortable for everybody, and then proceed ahead with -- depending on what the District Court says or doesn't say.  But at least then, that would give some comfort that they're aware of what's going on in my Court vis-a-vis what they've ruled in their Court.

MR. STEVENS:  And we will -- I would suggest, only because it's a date -- I'm not so optimistic that I think something would be done by then, and the Court would have an opportunity, adequate opportunity to look at it.  But if we carried it to July 9th, while there's already hearings, and we could at the very least be able to report to Your Honor what we have done.  And if the Court would like, we can file via an attachment to a letter something on this docket so this Court can see what we have done in District Court.

THE COURT:  That's fine with me.

Does anyone appearing telephonically have anything for the record at this point?

MR. ROGLIERI:  Your Honor, this is Kris Roglieri. I do, if you would let me speak for a brief moment.

THE COURT:  Mr. Roglieri.

MR. ROGLIERI:  Okay.  I appreciate you just giving me the floor here, and I won't take too much of anybody's

Page 12

time.

I just wanted to say this on the record, that I absolutely have a vested interest to see where this $20 million went that was sent from my company, perhaps more than anybody on this call.  As I said from the beginning of this case, Prime Capital was a victim of what I now know to be a sophisticated, coordinated scheme by two companies that conspired with each other to defraud Prime Capital Ventures. And the companies I'm speaking of is Rain Financial and Berone Capital.  The truth will eventually come out in my criminal trial, and I hope it will come out in this proceeding as well.

My counsel and I have significant information that the law firm representing Prime here does not have simply because they're behind on the evidentiary, you know, process, and you know, I believe granting this motion will bring them up to speed.  Plus, they're missing a couple pieces of the puzzle here to put the whole thing together. You know, the only thing we don't know is where the majority of the $20 million went after it was fraudulently sent to Martin Karo.

So I was just coming here today to support the motion to grant the subpoenas to all Berone and Rain Capital parties because it would clarify a lot that's been missing here in a year-and-a-half.  So thank you for giving me the

Page 13

time.

THE COURT:  Mr. Roglieri, obviously there are substantive questions that have to be addressed at some point.  But my first step is with the District Court, where they are, if they have anything to offer.  But then, there are a lot of interesting questions.

Does anyone else have anything for the record today?

MR. NOSEK:  Robert Nosek, for the Berone Group.

Obviously, we are going to dispute everything that Mr. Roglieri said as far as Berone's involvement in any alleged fraud.  We've already gone through a lot of that in the Compass litigation in the District Court, when we were under receivership, which was released after we showed that there was no evidence that we were a joint venture for instance with Prime Capital, and you know, a fake bank statement that was not ours.

You know, our position is Prime Capital Ventures invested in one of our hedge funds, and we will be able to show -- And we largely believe that based on documents that were provided by us to the receiver in the District Court action, or he obtained them directly from the bank, fully accounts for where all the $20 million went.  And so that's all I want to say at this point.

We are -- And we believe that the Debtor is still

Page 14

a member, a limited partner in the hedge fund, and regardless of what happens here, we are gathering information with regard to that investment, and we'll be turning that over to the Trustee and his Special Counsel.

THE COURT:  Mr. Stevens, anything for the record?

MR. STEVENS:  I would -- Just two notes, with respect to what we just heard.

To Mr. Roglieri's credit, I believe it would have been him that gave the direction.  He did have his criminal counsel reach out to me, and we had a discussion to provide some information.  But if I can read the tea leaves, there is only so much that they can share because, you know, their first interest is defending Mr. Roglieri with respect to the criminal charges, not in, you know, in any way that would inhibit that to help us.  But they did try to provide us with the information that they could, so that was appreciated.

With respect to Berone Capital, and the tone of our application, our application, I know that we had received an objection from Rain, who is not here today, that was -- thought we were taking definitive positions.  We're not necessarily doing that.  We just don't -- we really don't understand it.  We really want answers.

THE COURT:  Your papers seem to indicate we have more of a mystery than a declarative statement of

Page 15

declarative situation, that you're actually interested in answering a lot of very interesting questions.

MR. STEVENS:  Your Honor, absolutely.  I'm glad my writing was clear and good on that point.

THE COURT:  Very.

MR. STEVENS:  Because we're not.  We're not casting aspersions, or making accusations at this point. There's just a lot that we don't understand.  And we have, through three different actions, we have everyone's statements, all of which are contradictory and don't square up to documents.  Maybe they will.  Maybe when we're provided with what we need, we will understand it, and understand the party's positions.  But each of Berone, Rain, and Prime, under Mr. Roglieri's control, each had a very different and contradictory view of what these transactions were, and what they meant.  And we're just trying to understand exactly what the truth is, and whether we have a claim or claims to get this money returned.

THE COURT:  And this obviously involves a great deal of money.

MR. STEVENS:  That is correct.

And for Berone, the only response I'd have to what Mr. Nosek said with respect to the proofs in the District Court, what carried the day in our interpretation, we weren't involved in the litigation, our interpretation of

Page 16

Judge D'Agostino's decision was not that Berone was vindicated in any way other than to state that the Plaintiff in that litigation, Compass, could not draw a nexus between their ICA deposit and the money that they put into Prime, and the money that went to Berone, largely because the $20 million that went to Berone predated Compass's transfer of the ICA.

So there was a reason that they were released from that receivership.  I just wanted to make clear what that was, at least according to our interpretation of the decision, that it was not in any way a decision with respect to the transaction between Prime and Berone, because the Court raised significant questions about that.  But the Court ultimately concluded I don't really need to get to the bottom of all that.  All I need to get to the bottom of is that the Plaintiff in this action cannot draw a straight line from its money to what went to Berone, and for that reason and that reason alone, I can't impose, or continue to impose receivership against Berone (indiscernible) that clarification.

MR. ROGLIERI:  And Your Honor, if I just may say something?

THE COURT:  Yes.

MR. ROGLIERI:  This is Kris Roglieri.  I just want to add to that.

Page 17

The view from Prime Capital Ventures' standpoint has changed throughout this year-and-a-half simply because we didn't even have the complete picture of what happened to us, that we now have kind of come full circle, and we understand it based on things that we're in possession of, that neither -- and I forget the gentleman's name who just spoke, neither his firm has, neither the Government has, to be honest with you.

And you know what?  I'm just going to put it on record because I have every incentive to do so, but mind you, I was interviewed as a victim by the FBI in November of 2023, of which Rain and Berone was a target of their investigation.  And I willfully -- By the Southern District of the FBI, mind you, Criminal Division, Financial Criminal Division.  I was interviewed by the FBI as a victim, which my counsel for that matter can attest to, and Berone and Rain were under investigation by a Grand Jury, and they probably still are.

So I just want to throw that out there, which we could provide evidence of that.  That's not just hearsay.

THE COURT:  So Counselors, let's show that this is adjourned right now to July 9th, at 10:30.  But that's an ongoing dynamic.

Mr. Stevens, perhaps as we get close to the 9th, if there's just a deafening silence that leaves us in the

Page 18

lurch to some extent, I'm hopeful that there will be some direction.  Because we're following their lead, or trying to not interrupt their lead, and go from there.  So my point is we may have to pick a day, and go further out.  But we can talk about that as needed.  And perhaps you can go to a non-motion day.  But I think this needs resolution sooner rather than later, so I'm just optimistic, maybe unrealistically optimistic that perhaps we can get on a fast track to try and get a resolution from the District Court.

Ms. Penpraze, does the U.S.T. have anything else to add?

MS. PENPRAZE:  No, Your Honor.  Thank you.

THE COURT:  Anything else from anyone for the record today?  If not, thank you all very much.  All of you have a --

Oh, I'm sorry.  We have one more.

MS. SITCER:  The Court will also call its related adversary, case number 259008, ER Tennessee LLC versus Prime Capital Ventures LLC.  This is a pretrial conference.

Will the parties please note their appearances for the record?

MR. LOMBARDO:  Your Honor, on the phone, this is Joe Lombardo of Chapman and Cutler, for ER Tennessee.

MR. STEVENS:  Fred Stevens, Klestadt Winters Jureller Southard & Stevens, Special Litigation Counsel to

Page 19

Yann Geron, the Chapter 11 Trustee.

THE COURT:  Counsel, it's an interesting factual scenario, and an interesting question, is there an express trust?  As I understand, the parties want to further talk about this, and are going to request an adjournment?

MR. LOMBARDO:  That's correct.

THE COURT:  Counselors, how far --

MR. LOMBARDO:  Particularly based on the fact that the new Trustee is appointed.

THE COURT:  How far out do you want to go?

MR. STEVENS:  Well, for us, your honor, July 9th as a carrying date works.  But I am perhaps being selfish, because I have a lot of things on that day, and Mr. Lombardo will only have probably one.  So I will defer to the Court and Mr. Lombardo on when.

THE COURT:  Mr. Lombardo, what's your take on this?

MR. LOMBARDO:  July 9th is fine.  I don't mind. Fred, if that works for you, then that's okay with me.  I can wait.  But that seems like a good day.  We're available that day.

THE COURT:  For today's purposes, we'll show July 9th, at 10:30.  I'm comfortable with the parties that are involved, if we get close to that day and you want a further reasonable adjournment, that works for me.  Just contact my

courtroom deputy, and then we'll follow that trail.  But unless we hear, if we don't hear anything, we'll talk about it that day, and see where we are and what's appropriate.

Does anyone else have anything for the record?

MR. LOMBARDO:  That's great, Your Honor.  Thank you.

THE COURT:  You're very welcome.  Does anyone else have anything for the record?  If not, thank you all very much.  All of you have a good day.

MR. STEVENS:  Thank you, Your Honor.

THE COURT:  Safe travels home.

(Whereupon these proceedings were concluded at 10:57 AM)

**C E R T I F I C A T I O N**

I, Lindsay Peacock, certify that the foregoing

transcript is a true and accurate record of the proceedings.

Lindsay Peacock

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  June 22, 2025

| & | 259008  18:18 | add  16:25 | appearances |
|---|---|---|---|
| **&**  2:22 3:11,19 5:14 6:2 18:25 | **265**  2:18 5:7 | 18:11 | 5:9,17 6:8 |
| | **267**  2:23 5:8 | **address**  10:9 | 18:20 |
| | **28661**  21:6 | **addressed**  13:3 | **appeared**  10:4 |

**1**

**10020**  4:4
**10036**  3:15
**10:30**  17:22
  19:23
**10:35**  1:16
**10:57**  20:13
**11**  3:12 5:4,16
  5:25 6:13,21
  19:1
**11501**  21:23
**11554**  3:22
**11a**  3:6
**12207**  1:13 3:7
**1270**  4:3
**17th**  3:14
**18**  1:15

**2**

**20**  2:11 7:4
  12:3,20 13:23
  16:5
**200**  3:14
**2004**  2:1,6,10
  2:15,20 5:7
**2023**  17:12
**2025**  1:15
  21:25
**22**  21:25
**224**  2:4 5:7
**226**  2:8 5:7 7:7
**228**  2:13 7:5
**24-11029**  1:3
  5:5

**3**

**300**  21:22
**30th**  4:3
**330**  1:12 21:21

**4**

**405**  6:6
**41st**  3:14
**445**  1:12

**6**

**620**  3:6
**6th**  4:3

**9**

**90**  3:21
**9th**  7:16,21
  11:13 17:22,24
  19:11,18,23

**a**

**able**  11:14
  13:19
**absolutely**  12:3
  15:3
**account**  2:16
**accounts**  13:23
**accurate**  21:4
**accusations**
  15:7
**action**  13:22
  16:16
**actions**  15:9
**actually**  15:1

**adequate**
  11:12
**adjourn**  7:9,13
  7:20 9:11,12
  10:25
**adjourned**
  7:24 11:1
  17:22
**adjournment**
  7:11 19:5,25
**adjourns**  8:7
**adler**  3:19 6:2
**admitted**  6:2,4
**adversary**
  18:18
**ago**  8:25
**agreed**  7:8
**ahead**  5:20
  8:23 11:5
**al**  3:20
**albany**  1:13
  3:7
**alleged**  13:12
**amount**  7:10
**answer**  10:11
  10:11
**answering**
  15:2
**answers**  9:23
  14:23
**anybody**  12:5
**anybody's**
  11:25

**appearing**  4:8
  11:19
**application**  7:4
  7:8,13 8:3,23
  14:19,19
**applications**
  6:24
**appointed**  19:9
**appreciate**
  11:24
**appreciated**
  14:17
**appropriate**
  20:3
**approval**  8:12
**area**  9:2
**areas**  8:21
**aspersions**
  15:7
**assume**  8:15
  9:13
**attachment**
  11:16
**attest**  17:16
**attorney**  3:20
  4:2
**available**  19:20
**ave**  4:3
**avenue**  3:6,21
**aware**  6:14
  11:7

**[b - court]**

| b | c |
|---|---|

**b**  1:21 6:7
**back**  7:9 11:2
**backdoor**  9:18
**balin**  3:19 6:2
**bank**  13:16,22
**bankruptcy**
  1:1,23
**based**  13:20
  17:5 19:8
**beginning**  12:5
**beguesse**  6:7
**believe**  7:22
  8:24 9:14
  12:16 13:20,25
  14:8
**benefit**  2:17
**berone**  2:12
  3:20 6:4,5,5,6
  7:6 8:18 9:6
  12:10,23 13:9
  14:18 15:13,22
  16:1,5,6,12,17
  16:19 17:12,16
**berone's**  13:11
**best**  10:5
**beyond**  11:3
**bottom**  16:15
  16:15
**bravo**  2:2
**brief**  11:22
**bring**  12:17
**broadway**  1:12
**building**  3:5

**c**  3:1 5:1 21:1,1
**calendar**  5:4
**call**  12:5 18:17
**capital**  1:7 2:3
  2:8,12,12,17
  2:22 3:20 5:6
  6:5,5,5,6,18
  12:6,8,10,23
  13:16,18 14:18
  17:1 18:19
**capra**  10:2
**carried**  11:13
  15:24
**carrying**  19:12
**case**  1:3 5:5
  6:18 12:6
  18:18
**cases**  6:19
**casting**  15:7
**certify**  21:3
**certilman**  3:19
  6:2
**chambers**  5:3
  7:8
**changed**  9:1
  17:2
**chapman**  4:1
  18:23
**chapter**  3:12
  5:4,16,25 6:13
  6:21 19:1
**charges**  14:14
**circle**  17:4
**circulated**  8:11
**claim**  15:18

**claims**  15:18
**clarification**
  16:20
**clarify**  12:24
**clear**  15:4 16:9
**clerk's**  7:19
**clinton**  3:6
**close**  17:24
  19:24
**come**  12:10,11
  17:4
**comfort**  10:16
  11:7
**comfortable**
  8:23 11:4
  19:23
**coming**  12:22
**comity**  8:21
**communicated**
  7:8
**companies**
  12:7,9
**company**  12:4
**compass**  13:13
  16:3
**compass's**  16:6
**complete**  17:3
**concluded**
  16:14 20:13
**conference**
  18:19
**connection**  2:2
  2:6,11,20
**consent**  8:14
**considering**
  6:17

**conspired**  12:8
**contact**  19:25
**continue**  16:18
**continues**  6:13
**contradictory**
  15:10,15
**control**  15:14
**convince**  9:25
**coordinated**
  12:7
**copy**  10:22
**correct**  10:2
  15:21 19:6
**counsel**  3:12
  5:15 12:13
  14:4,10 17:16
  18:25 19:2
**counsel's**  8:11
**counselors**
  6:23 17:21
  19:7
**country**  21:21
**couple**  12:17
**court**  1:1 5:17
  5:23 6:8,14,23
  6:24 7:15,18
  7:24 8:6,9,14
  8:18,22 9:3,8
  9:10,15,18,19
  9:21 10:5,7,8,8
  10:12,13,15,23
  10:24 11:1,5,8
  11:8,11,15,17
  11:17,18,23
  13:2,4,13,21
  14:5,24 15:5
  15:19,24 16:13

**[court - foregoing]**

16:14,23 17:21
18:9,13,17
19:2,7,10,14
19:16,22 20:7
20:11
**court's** 10:23
**courthouse**
1:11
**courtroom**
20:1
**creatively** 7:19
**credit** 14:8
**criminal** 12:11
14:9,14 17:14
17:14
**cutler** 4:1
18:23

**d**

**d** 5:1
**d'agostino's**
16:1
**daniel** 4:10
**date** 7:15 10:25
10:25 11:10
19:12 21:25
**dates** 7:9
**day** 11:2,3,3,4
15:24 18:4,6
19:13,20,21,24
20:3,9
**deafening**
17:25
**deal** 7:19 15:20
**debtor** 1:9 2:15
2:16,17 13:25
**debtor's** 2:2,11
2:21

**decision** 16:1
16:11,11
**declarative**
14:25 15:1
**defending**
14:13
**defer** 19:14
**definitive**
14:21
**defraud** 12:8
**deny** 9:11
**depending**
11:5
**deposit** 16:4
**deputy** 20:1
**different** 15:9
15:15
**direction** 9:5
14:9 18:2
**directly** 13:22
**discovery** 6:16
8:25 9:8,18
10:1
**discussion**
14:10
**dispute** 13:10
**district** 1:2 6:4
8:22 9:3,7,15
10:8,12,13,25
11:5,17 13:4
13:13,21 15:23
17:13 18:9
**division** 17:14
17:15
**docket** 2:4,8,13
2:18,23 7:5,7
11:16

**documents** 5:7
13:20 15:11
**doing** 14:22
**donald** 3:24
**draw** 16:3,16
**dynamic** 17:23

**e**

**e** 1:21,21,22
3:1,1 5:1,1 6:7
6:7,7 21:1
**east** 3:22
**ecro** 1:25
**effect** 8:20
**enterprises** 2:2
**equity** 6:6
**er** 4:2 18:18,23
**estate** 6:16
**et** 3:20
**eventually**
12:10
**everybody**
11:4
**everyone's**
15:9
**evidence** 13:15
17:20
**evidentiary**
12:15
**exactly** 10:23
15:17
**examination**
2:1,6,10,15,20
8:5
**examinations**
5:7 6:14
**examinee** 7:21

**examinees** 8:7
**express** 19:3
**extent** 6:20
18:1

**f**

**f** 1:21 21:1
**fabian** 6:7
**fact** 19:8
**factual** 19:2
**fake** 13:16
**far** 13:11 19:7
19:10
**fast** 18:8
**fbi** 17:11,14,15
**federal** 3:5
**figure** 9:6 11:2
**file** 11:15
**filed** 2:3,7,12
2:17,22 6:18
10:20
**financial** 2:10
6:15 12:9
17:14
**fine** 9:4 11:18
19:18
**firm** 8:4 12:14
17:7
**first** 5:5 13:4
14:13
**five** 6:24
**floor** 3:14 4:3
11:25
**foley** 1:11
**follow** 20:1
**following** 18:2
**foregoing** 21:3

**[forget - judge]**

**forget** 17:6
**four** 6:24
**fraud** 13:12
**fraudulently** 12:20
**fred** 3:17 5:13 18:24 19:19
**full** 17:4
**fully** 13:22
**fund** 2:12 6:5,6 14:1
**funds** 13:19
**further** 18:4 19:4,24

**g**

**g** 5:1 6:7
**gathering** 14:2
**gentleman's** 17:6
**geron** 3:13 4:9 5:15,20,24,25 19:1
**give** 7:15 9:16 9:17 10:16 11:6
**giving** 11:24 12:25
**glad** 15:3
**go** 5:4,20 8:16 10:5 11:3 18:3 18:4,5 19:10
**going** 6:25 7:1 8:23,25 9:7,12 9:25 11:7 13:10 17:9 19:5

**good** 5:2,11,13 5:18,20,21,23 5:24 6:1,11 15:4 19:20 20:9
**goods** 2:16
**government** 17:7
**grand** 17:17
**grant** 7:1 12:23
**granted** 7:25
**granting** 12:16
**grants** 8:6
**great** 15:19 20:5
**group** 13:9
**guess** 6:18 10:15
**guessing** 8:20
**guidance** 9:10 9:17 11:1

**h**

**hac** 6:3
**half** 12:25 17:2
**happened** 17:3
**happens** 14:2
**hear** 20:2,2
**heard** 14:7
**hearing** 2:1
**hearings** 7:16 11:13
**hearsay** 17:20
**hedge** 13:19 14:1
**help** 14:15
**hogan** 8:5

**home** 20:11
**hon** 1:22
**honest** 17:8
**honor** 5:11,13 5:18,22,24 6:1 6:11,20 7:3 8:10,17 9:24 10:4 11:14,21 15:3 16:21 18:12,22 19:11 20:5,10
**hope** 12:11
**hopeful** 18:1
**hopefully** 10:8
**hudson** 2:22,22
**hyman** 3:19 6:2

**i**

**ica** 16:4,7
**important** 6:16
**impose** 16:18 16:19
**incentive** 17:10
**indicate** 14:24
**indicated** 9:24
**indication** 8:24 9:3
**indigo** 2:7 7:7 7:9,12,14 8:3,8
**indiscernible** 7:12,14,17,23 8:13 16:19
**inform** 10:22
**information** 6:21 7:5,11 9:17 12:13 14:3,11,16

**inhibit** 14:15
**instance** 13:16
**institutions** 2:11
**interest** 12:3 14:13
**interested** 6:10 15:1
**interesting** 9:21 13:6 15:2 19:2,3
**interpretation** 15:24,25 16:10
**interrupt** 18:3
**interviewed** 17:11,15
**invested** 13:19
**investigation** 17:13,17
**investment** 14:3
**involved** 15:25 19:24
**involvement** 13:11
**involves** 15:19
**issue** 10:23

**j**

**james** 1:11
**jeremiah** 6:7
**joe** 4:6 18:23
**joint** 13:15
**jr** 1:22
**judge** 1:23 5:3 8:24 9:3,13,16 16:1

[july - objection]                                                          Page 5

| | | | |
|---|---|---|---|
| **july** 7:16,21 11:13 17:22 19:11,18,22 | **limited** 8:25 14:1 | **making** 15:7 | **n** |
| **june** 1:15 21:25 | **lindsay** 2:25 21:3,9 | **martin** 12:21 | **n** 3:1 5:1 21:1 |
| **jureller** 3:11 5:14 18:25 | **line** 16:17 | **matter** 1:5 5:5 8:8 17:16 | **name** 17:6 |
| **jury** 17:17 | **lisa** 3:9 5:11 | **matthew** 2:3 | **necessarily** 14:22 |
| **k** | **litigation** 3:12 5:15 8:19 13:13 15:25 16:3 18:25 | **meadow** 3:22 | **need** 10:7 15:12 16:14,15 |
| **karo** 12:21 | **littlefield** 1:22 | **meant** 15:16 | **needed** 18:5 |
| **kate** 1:25 5:2 | **littlefield's** 5:3 | **member** 14:1 | **needs** 18:6 |
| **kind** 17:4 | **llc** 1:7 2:3,4,7,8 2:13,18,21,22 2:22 6:5,6,6 18:18,19 | **merrick** 3:21 | **neither** 17:6,7 17:7 |
| **klestadt** 3:11 5:14 18:24 | **llp** 3:11,19 | **mid** 2:2 | **new** 1:2 3:15 4:4 19:9 |
| **know** 5:21 10:4 10:12,20 12:6 12:15,16,19,19 13:16,18 14:12 14:14,19 17:9 | **lombardo** 4:6 18:22,23 19:6 19:8,13,15,16 19:18 20:5 | **million** 2:12 7:4 12:4,20 13:23 16:6 | **nexus** 16:3 |
| **knowledge** 9:7 | **long** 9:12 10:11 10:13,15,20 | **milone** 3:25 6:3 | **nicole** 3:25 6:3 |
| **kris** 4:10 5:18 5:22 11:21 16:24 | **look** 9:10 11:12 | **mind** 17:10,14 19:18 | **non** 2:17 8:7 11:3 18:5 |
| **l** | **lot** 12:24 13:6 13:12 15:2,8 19:13 | **mineola** 21:23 | **northern** 1:2 |
| **largely** 13:20 16:5 | **lovells** 8:5 | **missing** 12:17 12:24 | **norwell** 2:21 |
| **law** 8:4 12:14 | **lp** 2:12 6:5,6 | **moment** 11:22 | **nosek** 3:24 6:1 6:2 13:9,9 15:23 |
| **lead** 18:2,3 | **lurch** 18:1 | **money** 15:18 15:20 16:4,5 16:17 | **note** 5:9 18:20 |
| **learned** 10:3 | **m** | **morning** 5:2 5:11,13,18,20 5:22,23,24 6:1 6:3,11 | **notes** 14:6 |
| **leaves** 14:11 17:25 | **m** 3:9 | **motion** 2:1,6 2:10,15,20 5:6 7:20 8:5 11:3,3 12:16,23 18:6 | **november** 17:11 |
| **legal** 21:20 | **magistrate** 8:22 9:15 10:8 | **motorsports** 6:6 | **number** 5:5,7 7:5,7 18:18 |
| **lending** 2:21 | **majority** 12:19 | **move** 11:2 | **ny** 1:13 3:7,15 3:22 4:4 21:23 |
| **leo** 3:5 | **make** 16:9 | **mystery** 14:25 | **o** |
| **letter** 11:16 | | | **o** 1:21 5:1 21:1 |
| | | | **o'brien** 3:5 |
| | | | **objecting** 8:7 |
| | | | **objection** 14:20 |

**[observer - records]**

| | | | |
|---|---|---|---|
| **observer** 6:10 | 12:24 18:20 | **predated** 16:6 | **puzzle** 12:18 |
| **obtained** 13:22 | 19:4,23 | **pretrial** 18:19 | **q** |
| **obviously** 9:5 | **partner** 14:1 | **previous** 6:19 | **question** 9:8 |
| 13:2,10 15:19 | **partners** 6:5 | **prime** 1:7 2:3,7 | 19:3 |
| **occurred** 6:15 | **party's** 15:13 | 2:12,17,22 5:6 | **questions** 9:24 |
| **offer** 13:5 | **peacock** 2:25 | 6:18 12:6,8,14 | 13:3,6 15:2 |
| **office** 3:3,4 | 21:3,9 | 13:16,18 15:14 | 16:13 |
| 5:12 7:19 | **penpraze** 3:9 | 16:4,12 17:1 | **r** |
| **oh** 7:6 18:16 | 5:11,12 6:9,11 | 18:18 | **r** 1:21 3:1 5:1 |
| **okay** 7:12 8:12 | 18:10,12 | **prior** 7:9 | 21:1 |
| 8:12 9:9 10:3 | **petition** 6:15 | **pro** 6:3 | **rain** 8:18 9:6 |
| 11:24 19:19 | **pharmaceuti...** | **probably** 9:25 | 12:9,23 14:20 |
| **old** 21:21 | 2:7 7:7 | 17:18 19:14 | 15:13 17:12,17 |
| **once** 8:4 | **phone** 18:22 | **proceed** 11:5 | **raised** 16:13 |
| **ones** 7:1 | **pick** 10:25 11:4 | **proceeding** | **rather** 9:11 |
| **ongoing** 17:23 | 18:4 | 12:12 | 18:6 |
| **open** 8:25 | **picture** 17:3 | **proceedings** | **reach** 14:10 |
| **opportunity** | **pieces** 12:18 | 20:13 21:4 | **read** 14:11 |
| 11:12,12 | **plaintiff** 16:2 | **process** 12:16 | **really** 14:22,23 |
| **opposed** 8:3 | 16:16 | **produced** 7:10 | 16:14 |
| 9:18 | **please** 5:9 | **professor** 10:2 | **reason** 7:18 |
| **opposition** | 18:20 | **proofs** 15:23 | 10:10,19 16:8 |
| 6:25 7:1,2,25 | **pleases** 8:6 | **properly** 8:16 | 16:18,18 |
| **optimistic** | **plus** 12:17 | **proposed** 5:15 | **reasonable** |
| 11:10 18:7,8 | **point** 6:12 9:6 | 6:13 7:20 8:11 | 19:25 |
| **order** 7:2 8:6 | 11:20 13:4,24 | **provide** 10:5 | **received** 14:20 |
| 8:11,14 9:14 | 15:4,7 18:3 | 10:13,21,22 | **receiver** 13:21 |
| 10:22 | **portions** 8:2 | 14:10,15 17:20 | **receivership** |
| **orders** 8:1 | **position** 6:10 | **provided** 6:17 | 13:14 16:9,19 |
| **p** | 6:12 9:4,16,17 | 8:12 13:21 | **record** 5:5,10 |
| **p** 3:1,1 5:1 | 13:18 | 15:12 | 11:20 12:2 |
| **papers** 14:24 | **positions** 14:21 | **provides** 11:1 | 13:7 14:5 |
| **part** 7:19 | 15:13 | **purposes** 8:21 | 17:10 18:14,21 |
| **particularly** | **possession** | 19:22 | 20:4,8 21:4 |
| 19:8 | 17:5 | **pursuit** 6:21 | **records** 6:17 |
| **parties** 2:1,6 | **pre** 6:15 | **put** 12:18 16:4 | |
| 2:10,20 5:9 | | 17:9 | |

**[referring - telephonic]**

**referring** 7:7
**regard** 14:3
**regarding** 9:17
**regardless** 14:2
**related** 18:17
**released** 13:14
  16:8
**report** 11:14
**representing**
  12:14
**request** 19:5
**requests** 10:6
**resolution** 18:6
  18:9
**respect** 7:4,11
  7:13 8:7 14:7
  14:13,18 15:23
  16:11
**response** 15:22
**returned** 15:18
**rhodes** 2:3
**right** 5:4 17:22
**road** 21:21
**robert** 1:22
  3:24 6:1 13:9
**roglieri** 4:10
  5:18,19,21,22
  11:21,21,23,24
  13:2,11 14:13
  16:21,24,24
**roglieri's** 14:8
  15:14
**room** 3:6
**ruled** 11:8
**ruling** 10:14,21

**s**

**s** 2:17 3:1 5:1
  6:7,7
**safe** 20:11
**says** 11:6
**scenario** 19:3
**scheme** 12:7
**second** 8:20
**see** 9:14 11:17
  12:3 20:3
**seeing** 6:12
**seek** 7:11
**seeking** 7:5
**seem** 14:24
**seems** 19:20
**selfish** 19:12
**sent** 12:4,20
**separate** 7:22
  8:3
**services** 2:16
**share** 14:12
**show** 7:24 8:14
  13:20 17:21
  19:22
**showed** 13:14
**signature** 21:6
**significant**
  12:13 16:13
**silence** 17:25
**simply** 12:14
  17:2
**sit** 10:5
**sitcer** 1:25 5:2
  7:18,22 18:17
**situation** 8:18
  9:1,21,22 10:9
  15:1

**solutions** 21:20
**sooner** 18:6
**sophisticated**
  12:7
**sorry** 5:20 7:6
  18:16
**south** 2:3
**southard** 3:11
  5:14 18:25
**southern** 17:13
**speak** 11:22
**speaking** 12:9
**special** 3:12
  5:15 14:4
  18:25
**speed** 12:17
**spoke** 17:7
**square** 15:10
**standpoint**
  17:1
**start** 5:6 6:23
  9:1
**starting** 5:3
**state** 16:2
**statement**
  13:17 14:25
**statements**
  15:10
**states** 1:1,11
  3:3,4 6:9
**step** 13:4
**stevens** 3:11,17
  5:13,14,14 7:1
  7:3,16 8:2,9,10
  8:17,19 9:9,20
  9:23 10:3,10
  10:18 11:9

  14:5,6 15:3,6
  15:21 17:24
  18:24,24,25
  19:11 20:10
**stewart** 8:22
  8:24 9:3,14
**stone** 6:7
**straight** 16:16
**street** 3:14
**submit** 8:6
**submitted** 7:2
**subpoenas**
  12:23
**substantive**
  13:3
**suggest** 11:9
**suite** 1:12
  21:22
**support** 12:22
**supports** 6:20
**suspects** 2:16

**t**

**t** 1:11 21:1,1
**take** 6:9 7:20
  9:12 10:11,13
  10:15,19,21
  11:25 19:16
**takes** 6:12
**talk** 18:5 19:4
  20:2
**talking** 7:5
**target** 17:12
**tea** 14:11
**tee** 10:16
**telephonic**
  5:17

**[telephonically - yann]**  Page 8

| | | | |
|---|---|---|---|
| **telephonically** 3:24,25 4:6,8 11:19 | **transcribed** 2:25 | **ultimately** 16:14 | **vis** 9:15,15 11:8,8 |
| **tell** 9:12 | **transcript** 10:22 21:4 | **uncomfortable** 8:19 9:22 | **voluntarily** 7:10,10 |
| **tennessee** 4:2 18:18,23 | **transfer** 2:11 16:6 | **under** 13:14 15:14 17:17 | **w** |
| **thacker** 2:3 | **transferees** 2:15 | **understand** 14:23 15:8,12 15:13,17 17:5 19:4 | **w** 3:5 |
| **thank** 6:21 7:3 8:10,17 12:25 18:12,14 20:5 20:8,10 | **transfers** 2:2,7 | | **wait** 19:20 |
| | **travels** 20:11 | | **want** 9:5 13:24 14:23 16:24 17:19 19:4,10 19:24 |
| **thing** 12:18,19 | **tread** 9:7 | **united** 1:1,11 3:3,4 6:9 | **wanted** 12:2 16:9 |
| **things** 17:5 19:13 | **treading** 8:21 9:2 | **unrealistically** 18:7 | **way** 10:17 14:14 16:2,11 |
| **think** 9:24 10:18,19 11:10 18:6 | **tremendous** 7:10 | **updated** 9:5 | **we've** 8:11 13:12 |
| | **trial** 12:11 | **upstairs** 8:19 9:8,13 | |
| **thought** 14:21 | **true** 21:4 | **v** | **wednesday** 5:4 |
| **three** 15:9 | **trust** 19:4 | | **week** 10:19 |
| **throw** 17:19 | **trustee** 3:3,4 3:12 5:12,16 5:25 6:9,12,13 6:20 14:4 19:1 19:9 | **venture** 13:15 | **welcome** 20:7 |
| **time** 8:15 10:7 10:20 12:1 13:1 | | **ventures** 1:7 2:4,8,13,18,21 2:22 5:6 6:18 12:8 13:18 17:1 18:19 | **went** 12:4,20 13:23 16:5,6 16:17 |
| **today** 6:10 10:1 12:22 13:8 14:20 18:14 | **trustees** 6:21 | | **west** 3:14 |
| | **truth** 12:10 15:17 | **veritext** 21:20 | **willfully** 17:13 |
| | **try** 14:15 18:8 | **versus** 18:18 | **winters** 3:11 5:14 18:24 |
| **today's** 19:22 | **trying** 15:16 18:2 | **vested** 12:3 | **works** 8:9 19:12,19,25 |
| **together** 12:18 | **turning** 14:4 | **vetted** 8:16 | **writing** 15:4 |
| **tone** 14:18 | **two** 12:7 14:6 | **vice** 6:3 | **x** |
| **track** 18:8 | **u** | **victim** 12:6 17:11,15 | **x** 1:4,10 |
| **trail** 20:1 | **u** 6:7 | **view** 15:15 17:1 | **y** |
| **transaction** 16:12 | **u.s.** 1:23 5:12 6:12,20 | **vindicated** 16:2 | **yann** 3:13 4:9 5:15,25 19:1 |
| **transactions** 2:21 6:15 15:15 | **u.s.t.** 18:10 | **virtually** 6:17 | |

**[year - york]**

**year**   12:25
   17:2
**york**   1:2 3:15
   4:4